510 A.2d 253

STATE of Maryland

v.

Marvin Nathaniel DUCKETT.

No. 50, Sept. Term, 1985.

Court of Appeals of Maryland.

June 26, 1986.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellant.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

We shall decide in this case whether a prior conviction for assault and battery is admissible to impeach the credibility of a witness.

The facts stipulated by the parties pursuant to Maryland Rule 828 g are as follows. In the early morning hours of March 27, 1983, outside a bar in Malcolm, Maryland, Marvin Nathaniel Duckett shot Charles Savoy. Duckett was charged with assault with intent to maim, assault, and carrying a weapon openly with intent to injure. He was tried by a jury in the Circuit Court for Charles County.

The State's evidence at trial indicated that the shooting was unprovoked. Duckett, on the other hand, testified that he was being verbally abused by Savoy and members of Savoy's family, and that Savoy was armed with a knife. Duckett averred that he knew that Savoy had once stabbed his own brother seriously enough to require thirty-two stitches. Duckett testified further that he told Savoy to put his knife away but that Savoy advanced on him; that he retreated and fired a warning shot in the air; that he again warned Savoy; that he did not want to injure Savoy; and that he shot Savoy once in the leg only after Savoy continued to advance toward him.

During the State's cross-examination of Duckett, the following colloquy occurred:

Q. Mr. Duckett, are you the same Marvin Nathaniel Duckett being over eighteen years of age and represented by an attorney convicted of assault and battery, Criminal 7665, in the Circuit Court for Charles County?

MR. COOPER: Objection.

THE COURT: Overruled.

THE WITNESS: Excuse me.

THE COURT: You may answer the question.

THE WITNESS: What was the question again?

BY MR. MORELAND:

Q. Are you the same Marvin Nathaniel Duckett while being over eighteen years of age and being represented

by counsel who was convicted of assault and battery under Criminal No. 7665 in the Circuit Court for Charles County?

A. You asked me was I convicted of assault and battery?

Q. Yes?

A. I wouldn't say I was convicted. I took a plea bargain, which I should never have. I would like to state that, too.

Q. One more time—

MR. COOPER: I think he has answered the question.

THE WITNESS: I think so, too.

THE COURT: You say you took a plea bargain? What do you mean by plea bargain. You—did you enter a plea of guilty?

THE WITNESS: Just what a plea bargain is. I see what you are saying. I wasn't trying to be smart. I understand what you are saying.

I entered a plea of guilty. Yes. But I was not convicted.

THE COURT: There wasn't a trial and a conviction:

THE WITNESS: Right.

THE COURT: But you entered a plea of guilty in accordance with a bargain reached between your attorney and the State's Attorney?

THE WITNESS: Yes sir.

BY MR. MORELAND:

Q. You just indicated you regret doing that?

MR. COOPER: Objection.

THE COURT: Sustained.

A limiting instruction with regard to the prior conviction for assault and battery was neither requested by Duckett nor given by the court.

Duckett was acquitted of assault with intent to maim but convicted of assault and carrying a weapon openly with intent to injure. He was sentenced to four years imprisonment. On appeal to the Court of Special Appeals, that

court reversed the conviction in *Duckett v. State,* 61 Md. App. 151, 485 A.2d 691 (1985). Thereafter, we granted the State's petition for certiorari.

The stipulated facts make evident that the jury's resolution of this case turned upon whom they should believe— Duckett or the State's witnesses. In its attempt to convince the jury that Duckett's version of the facts was not the correct one, the State attempted to discredit Duckett's testimony by eliciting from him that he had once been convicted of assault and battery. The State argues that the trial court is vested with discretion to admit a conviction for assault and battery to impeach a witness, and that the trial court here did not abuse its discretion in allowing the cross-examination. Appellee argues, on the other hand, that a prior conviction for assault and battery is inadmissible to impeach a witness and that the trial court has no discretion to allow this evidence. Appellee also posits that even if the judge is vested with discretion to allow the evidence of the prior conviction for assault and battery, the judge abused his discretion here because any probative value of the conviction was outweighed by prejudice to appellant.

We thoroughly reviewed the admissibility of prior convictions for impeachment in *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981), and our analysis there sets the framework for any determination of whether a conviction is admissible to impeach. *Ricketts* involved the question of whether indecent exposure was admissible to impeach the credibility of the defendant. In resolving the issue, we first pointed out that what is now Maryland Code (1974, 1984 Repl.Vol.), § 10–905 of the Courts and Judicial Proceedings Article provides that "[e]vidence is admissible to prove ... the fact of [a witness's] conviction of an infamous crime." We noted that an "infamous crime" had been defined generally by our cases to mean "such crime as involved moral turpitude, or such as rendered the offender incompetent as a witness in court, upon the theory that a person would not commit so heinous a crime unless he was so depraved as to

be unworthy of credit." 291 Md. at 706, 436 A.2d 909 (quoting *State v. Bixler,* 62 Md. 354, 360 (1884). We also cited *Garitee v. Bond,* 102 Md. 379, 62 A. 631 (1905) for the proposition that:

> The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi,* which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice.

291 Md. at 706–07, 436 A.2d at 909 (quoting *Garitee v. Bond, supra,* 102 Md. at 383, 62 A. at 633). We noted further in *Ricketts* that "what offenses could properly be said to be crimes of moral turpitude were still undetermined. We recognized that the term was imprecise but acknowledged that it connoted conduct which was base or vile and contrary to the accepted conduct between men. *Dental Examiners v. Lazzell,* 172 Md. 314, 320, 191 A. 240 (1937)." *Ricketts,* 291 Md. at 707, 436 A.2d at 909. We also pointed out in *Ricketts* that our cases recognize an even broader base for the use of prior convictions to impeach:

> It has been held by this court that evidence of the accused's previous conviction of crime *need not be restricted to infamous crimes or those involving moral turpitude,* provided the violation of law may have some tendency to show that the person charged is not to be believed under oath.

*Ricketts, Id.* at 707, 436 A.2d at 909–10 (quoting *Cousin v. State,* 230 Md. 2, 4, 185 A.2d 488, 489 (1962); emphasis in *Ricketts,* citations omitted).

Thus, in *Ricketts* we reiterated the law in Maryland that to be admissible for impeachment, the crime must be an infamous crime, one involving moral turpitude, or a lesser crime tending to show that the person charged should not be believed. The crux of our decision in *Ricketts,* however, centers upon the principle which we recognized must guide

a court in the determination of whether a crime may be classified in any one impeaching category. Namely, to be classified as an infamous crime, one involving moral turpitude, or a lesser crime affecting veracity, the *crime itself* must clearly identify the prior conduct of the witness which tends to show that he is unworthy of belief.

Thus, in determining whether indecent exposure was an infamous crime, we stressed in *Ricketts* that:

an indecent exposure conviction, without more, says little about the conduct for which the person was convicted. Because the offense requires only a general intent, the gamut of offenses and circumstances that fall within the ambit of the crime are so widely varied that, while one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment perhaps dictated by necessity....

It is the vagueness or uncertainty in the nature of the offense that makes it difficult to classify indecent exposure as infamous or something less. As we have noted, the crimes that are normally associated with the term "infamous because of their moral turpitude [are] treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi*," *Garitee v. Bond, supra*, 102 Md. at 383, 62 A. [at 633]. They leave no doubt as to the type of conduct committed and condemned. The courts, legislature, and society have made the determination that such crimes, because they show such a lack of regard for societal norms and values, are relevant in assessing the credibility of one who has been convicted of those offenses. It is our view that the wide spectrum of conduct and degrees of depravity associated with indecent exposure make it clear that it does not conform with those offenses regarded as infamous. [291 Md. at 711, 436 A.2d at 911–12.]

In determining whether the crime of indecent exposure was a crime of moral turpitude, we concluded:

Indecent exposure is a general intent crime that includes within its scope an innumerable variety of offenses, including acts that are reckless and negligent. As such, its meaning is entirely too unspecific to warrant the appellation of a crime of moral turpitude.... [*Id.* at 713, 436 A.2d at 912.]

Finally, in deciding whether the crime of indecent exposure was a lesser violation which affects credibility, we said:

*Cousins* mandates that we take at least two factors into consideration; length of time and nature of the offense.

\* \* \* \* \* \*

At the very heart of our determination of this matter, however, is the kinds of conduct which give rise to this offense. We believe that whether the crime sought to be used to impeach describes with sufficient specificity the conduct reflecting on the defendant's credibility is another factor to be weighed by the trial court. If the crime is so ill-defined that it causes the factfinder to speculate as to what is impacting on the defendant's credibility, it should be excluded. Stated differently, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment. [*Id.* at 701, 436 A.2d at 913.]

To summarize, we established in *Ricketts* that where it cannot be determined by the name of the crime that the conduct of the defendant amounted to conduct so "heinous and depraved" as to amount to an infamous crime, or conduct so "vile and contrary to the accepted and customary conduct between men" to be classified as an act of moral turpitude, or conduct which reflects on the defendant's credibility so as to constitute an admissible "lesser violation," that crime is inadmissible for purposes of impeachment. When we cannot say what it was that the defendant did, we cannot say that his conduct renders his credibility suspect.

With this backdrop in place, we examine the crime of "assault and battery." We first note that the term is a misnomer, for there is no single crime in our state called "assault and battery." When the term is used, it either describes two crimes, or as in the case *sub judice*, it refers to the crime of battery, and the word "assault" is superfluous. *See Woods v. State*, 14 Md.App. 627, 632, 288 A.2d 215, 218 (1972); L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 253 (2d ed.1904).

Battery is a common law offense, the penalty for which is not statutorily prescribed, and has been traditionally defined by our court as the unlawful beating of another. *Kellum v. State*, 223 Md. 80, 85, 162 A.2d 473, 476 (1959); *Lamb v. State*, 67 Md. 524, 534, 10 A. 208, 209 (1887). We have also stressed, however, that *"any* unlawful force used against the person of another, *no matter how slight* will constitute a battery." *Kellum v. State, supra*, 223 Md. at 85, 162 A.2d at 476 (emphasis supplied). *See also Clark & Marshall, A Treatise on the Law of Crimes* § 10.19 (M. Barnes 7th ed.1967); 1 W. Hawkins, *A Treatise of the Pleas of the Crown* 110 (8th ed.1824); L. Hochheimer, *supra*, § 255; R. Perkins, *Criminal Law* 107 (2d ed. 1969); 1 *Russell on Crime* 728 (J.W.C. Turner ed. 1958); 6A C.J.S. *Assault and Battery* § 70. As Professor Hochheimer wrote, an "unlawful" touching is "[a]ny touching of the person in an angry, revengeful, rude or insolent manner...." L. Hochheimer, *supra*, § 225, at 288. Although intent is an element of the crime of battery, the intent need only be for the touching itself; there is no requirement of intent to cause a specific injury. *Id.*, § 256; 6A C.J.S. *Assault and Battery*, § 71.

Like indecent exposure, then, the types of offenses which fall within the ambit of the crime of battery vary widely. A person may commit battery by kissing another without consent, *see Moreland v. State*, 125 Ark. 24, 188 S.W. 1 (1916); touching or tapping another, *Gates v. State*, 110 Ga.App. 303, 138 S.E.2d 473 (1964); jostling another out of the way, *Clark and Marshall, supra*, § 10.19; throwing

water upon another, 1 *Russell, supra,* at 728; rudely seizing a person's clothes, L. Hochheimer, *supra,* § 255; cutting off a person's hair, *id.;* throwing food at another, *cf. D.C. v. State,* 436 So.2d 203 (Fla.App. 1 Dist.1983); or participating in an unlawful fight. *Commonwealth v. Collberg,* 119 Mass. 350 (1876). On the other hand, a battery may take the form of a severe beating.

By the name of the crime battery, then, the conduct of the witness is unknown; thus nothing can be shown concerning the probable veracity of the witness. Some additional cases illustrate the point. In *United States v. Masel,* 563 F.2d 322 (7th Cir.1977), the defendant had gone to an airport to demonstrate his disapproval of a United States Senator because of the Senator's alleged relationship to the armament industry. The defendant further showed his disdain with the Senator by spitting into the Senator's face. The court held that such was a battery, and that no more severe injury need be intended. In *Blue v. State,* 224 Ind. 394, 67 N.E.2d 377 (1946), the defendant, a striker on the pickett line in front of a company, pushed backward (into the arms of a sheriff) an employee who was attempting to cross the pickett line. The court held that although the employee was not injured, the defendant had committed assault and battery. In *Morgan v. Loyacomo,* 190 Miss. 656, 1 So.2d 510 (1941), where a storeowner wrongly and with no substantial ground believed that a customer was leaving the store with stolen merchandise, and forcibly seized a package from underneath the customer's arm, the storeowner committed assault and battery. Surely, it cannot be said of each defendant above that his credibility is open to suspicion because he committed the assault and battery.

Although there may be some circumstances where one who has committed a battery has done an act so devoid of regard for societal norms and values so as to render his credibility suspect, we cannot say, just from the name of the crime as assault or assault and battery, that the witness has committed such an act. Indeed, as one court noted,

"[a]cts of violence ... which may result from a short temper, a combative nature, extreme provocation, or other causes generally have little or no direct bearing on honesty or veracity." *Gordon v. United States*, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). We agree. There is no basis in logic to say that a propensity to engage in fisticuffs amounts to a predilection to lie.

As we see it, if the crime, such as assault and battery, is so vague that the misconduct cannot be readily ascertained, there is no room for the judge to exercise discretion. There is no basis for the trial judge to determine whether the conviction impacts upon the witness's credibility. Hence, such evidence is irrelevant and inadmissible.

For these reasons, we shall affirm the judgment of the Court of Special Appeals.

JUDGMENT AFFIRMED. CHARLES COUNTY TO PAY THE COSTS.

MURPHY, C.J., concurs in the result.