745 A.2d 438

**Kurt FULP**

v.

**STATE of Maryland.**

**No. 6981, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 3, 2000.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Patricia Jessamy, State's Atty. for Baltimore City, on brief), Baltimore, for Appellee.

Submitted before DAVIS, SALMON, and ROBERT F. FISCHER (Ret., Specially Assigned), JJ.

SALMON, Judge.

This case requires us to decide whether the trial judge erred in overruling a defense objection to the admission for impeachment purposes of appellant's prior conviction for assault with intent to murder in a case where the appellant was charged with murder. We hold that the trial court did err and reverse.

## BACKGROUND FACTS

### A. *The State's Case*

The victim, Shawn Greene (Greene), was fatally shot by appellant, Kurt Fulp, on November 23, 1997. Fulp was charged in the Circuit Court for Baltimore City with the first degree murder of Greene and the unlawful use of a handgun in the commission of a crime of violence. Fulp was tried before a jury and was convicted of second degree murder and the handgun offense.

At trial, Thomas Wilson testified that while walking down the street on the day of the shooting, he saw Fulp and the victim "tussling." He heard two gunshots and saw Fulp standing over the victim. Fulp then fled. The shooting occurred in the 1600 block of Presbury Street in Baltimore City.

Wilson also testified that on the day before the shooting, Fulp and Greene had an argument concerning who had the right to sell drugs on the corner of Presbury and Mount Streets. During that argument, Greene had pulled out a gun and pointed it at Fulp.

A second eyewitness to the shooting was Patrick Greene, the sixteen-year-old brother of the victim. He testified that he was standing on the corner of Mount and Presbury Streets talking to a friend when his brother walked by. According to Patrick Greene, Fulp caught up with Shawn Greene, grabbed him, turned him around, and then shot him. After the first shot, the victim tried to run across the street whereupon appellant shot him again. According to Patrick Greene, no words were exchanged between Fulp and the victim immediately prior to or after the shooting.

## B. *Appellant's Testimony*

Fulp admitted that he shot the victim but claimed he did so in self-defense. According to Fulp, on the day before the shooting, he was standing on the corner of Presbury and Mount Streets when the victim and another man approached him and told him to get off the corner. Fulp retorted, "Man, you got to be crazy." Shawn Greene then pulled out a gun, pressed it against Fulp's head, and told Fulp that he was going to kill him. Greene next reiterated his warning that Fulp had better "get off the corner." When Fulp said "Wait a minute," Greene jammed his gun into Fulp's mouth and said, "I should blow your . . . brains out." This scared Fulp greatly, and he left the corner and went home.

The following day (November 23, 1997) Fulp saw Shawn Greene on the street. Fulp was unarmed. Greene approached from the rear and said that he (Fulp) "shouldn't be in the area." Shawn Greene then said that he was going to kill Fulp, whereupon Fulp grabbed Greene intending to hit him in the mouth; however, before Fulp could strike a blow, Greene pulled out a gun. The two struggled over possession of the weapon, and it "just went off." Greene fell backward, leaving Fulp in possession of the gun, whereupon the weapon

"went off again." Fulp looked at the weapon and then "fled." He concluded his testimony by saying that during his struggle with Greene he believed that Greene was going to kill him, but nevertheless he had no intention of killing Greene.

Additional facts will be added in order to resolve the question presented.

## *ANALYSIS*

Did the trial court err in overruling appellant's objection to the impeachment of appellant with a prior conviction of assault with intent to murder?

Prior to appellant taking the stand, defense counsel handed the trial judge and the prosecutor a written motion *in limine.* Counsel orally advised the court that his client previously had been convicted of assault with intent to murder and distribution of cocaine. The conviction of assault with intent to murder was eight years old. During the argument concerning the motion, appellant's counsel asserted that the court should apply the balancing test set forth in *Jackson v. State,* 340 Md. 705, 668 A.2d 8 (1995), and exclude the conviction. Defense counsel said:

And one of the issues in the case, Your Honor, for you to decide is, is ... centrality or the importance of the defendant's testimony.

I'd like to proffer that the defendant is going to take the stand to testify that he does not deny being the one involved in the altercation that led to the decedent's death, but that the gun that was used to kill the decedent came from the decedent himself; in the struggle, he took the gun from the decedent. And it was probably the very same gun that was put in his mouth the day before.

Therefore, his credibility on this issue is of key importance to both sides. And if Your Honor allows the State to impeach this defendant by, of all crimes, assault with intent to murder when he's on trial for murder, Your Honor, I think it would be impossible for the jury to distinguish that the admissibility of such evidence is only to his credibility.

What it really does is paint him as a violent, negative guy. And that's exactly the evil that Your Honor must balance out of the equation.

At the conclusion of the hearing, the trial judge denied the motion *in limine* and advised the prosecutor that he could impeach appellant by use of the assault with intent to murder conviction. Defense counsel then asked for a continuing objection in regard to the admissibility of the conviction. The trial judge granted that request. *See* Md. Rule 2–517(b).[1]

On cross-examination, the prosecutor and the appellant had the following exchange:

Q. Since your 18th birthday, Mr. Fulp, when you have been represented by counsel or waived; that is, given up the right to be represented by counsel, have you been convicted of any crime of moral turpitude? Would you like me to explain what those are?

A. No. Yes.

Q. You'd like me to explain?

A. I know what you're saying. Yes.

Q. Yes, you have. Would you tell the jury what that might be, please?

A. Drugs.

Q. That would be the distribution of narcotics, would it not?

A. Yes.

Q. And when were you convicted of that?

A. '86.

Q. Anything else?

A. Attempt.

Q. Attempt?

---

1. Md. Rule 2–517(b) provides:

 **Continuing objections to evidence.** At the request of a party or on its own initiative, the court may grant a continuing objection to a line of questions by an opposing party. For purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope.

A. Attempted murder.[2]

Q. And when were you convicted of that, sir?

A. In 1990.

Maryland Rule 5–609 governs the admissibility of prior convictions that are intended to be used for impeachment purposes. It provides in material part:

(a) *Generally*. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of

---

2. After the colloquy set forth above, no one pointed out to the court or the jury that appellant was convicted of assault with intent to murder, rather than attempted murder. Because the crime of attempted murder is so close to that of assault with intent to murder, the mistake by appellant is understandable.

We recognize, however, that, although attempted murder and assault with intent to murder are somewhat similar, they are not the same. The Court said in *Hardy v. State*, 301 Md. 124, 128–29, 482 A.2d 474 (1984):

Because the overt act necessary for an attempt is frequently an assault, the two crimes have a significant overlap. But the overlap is not complete, because an overt act can qualify as an attempt and yet not rise to the level of an assault. For example, an attempted poisoning would qualify as attempted murder, but it would not be an assault, especially if the poison did not come in contact with the victim. *See Bittle v. State*, 78 Md. 526, 28 A. 405 (1894). An aborted attempt to bomb an airplane would not be an assault, but it would be attempted murder. *See People v. Grant*, 105 Cal.App.2d 347, 233 P.2d 660 (1951). Lying in wait can be sufficient to establish attempt, but it would not constitute an assault. A person who fires a shot at an empty bed where he mistakenly believes the victim is sleeping has committed attempted murder, but not an assault. *State v. Mitchell*, 170 Mo. 633, 71 S.W. 175 (1902). If a defendant procures the services of a "feigned accomplice"—someone who pretends to go along with a criminal undertaking—the defendant's acts in furtherance of the crime may constitute attempted murder, but not assault. *See, e.g., State v. Mandel*, 78 Ariz. 226, 278 P.2d 413 (1954); *People v. Parrish*, 87 Cal.App.2d 853, 197 P.2d 804 (1948); *State v. Gay*, 4 Wash.App. 834, 486 P.2d 341 (1971).

Professor Perkins has explained the difference between attempted **murder** and **assault** with **intent** to **murder** as follows:

The so-called "**assaults** with **intent**" require special attention in connection with the law of attempt. **Assault** with **intent** to **murder**, **assault** with **intent** to rob, **assault** with **intent** to rape, and **assault** with **intent** to inflict great bodily injury are found quite frequently in the codes. Others are not uncommon, and sometimes a section provides a special penalty for an **assault** to commit any **felony** not otherwise provided for by statute.

a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) *Time limit.* Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

 Appellant contends that the crime of assault with intent to murder° was neither an "infamous crime" nor a "crime relevant to" credibility, and therefore, that conviction was inadmissible under Rule 5–609(a)(1). The term "infamous crimes" means treason, common-law felonies,[3] and other offenses classified generally as *crimen falsi. State v. Giddens,* 335 Md. 205, 213, 642 A.2d 870 (1994); *Prout v. State,* 311 Md. 348, 360, 535 A.2d 445 (1988). *Crimen falsi* offenses "include crimes in the nature of perjury, false statements, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully." *Giddens,* 335 Md. at 213, n. 5, 642 A.2d 870; *see also Beales v. State,* 329 Md. 263, 269–70, 619 A.2d 105 (1993). To determine the nature of the crime that led to the prior conviction, the trial court should focus on the elements needed to prove the offenses for which the witness was convicted and not upon the particular facts surrounding that conviction. *Giddens,* 335 Md. at 222, 642 A.2d 870.

 When an assault with intent to murder is charged, the State must prove an assault upon the victim coupled with an intent to murder, which can be shown by proof that the crime would have been murder if the victim had died. *See*

---

**3.** Common law felonies mean crimes that were felonies prior to 1864 when the precursor to section 10–905(a) of the Courts and Judicial Proceedings Article of the Maryland Code (1998 Repl.Vol.) was enacted. *See* McClain, *Maryland Rules of Evidence,* 1994 ed. at 156.

*Hardy v. State,* 301 Md. 124, 128, 482 A.2d 474 (1984) ("Assault with intent to murder is a statutory aggravated assault set forth in § 12 of article 27."). The fact that murder was a common law felony, of course, does not mean that assault to commit that crime can also be so characterized. *See Watson v. State,* 311 Md. 370, 375, 535 A.2d 455 (1988), where the Court said that even though rape is a common law felony, attempted rape is not.[4] *See also State v. Bixler,* 62 Md. 354, 360 (1884) ("If ... the prisoner had been convicted of any of the assaults with intent, mentioned and punished by the Code, and had been sentenced to the penitentiary and served his time out there, without being pardoned by the governor, he would not be chargeable with having committed an 'infamous crime.' ").

█ Because appellant had not been convicted of either treason or an "infamous crime," the question arises as to whether assault with intent to murder is a crime "relevant to the witness's credibility" as that phrase is used in Rule 5–609(a). In *Giddens,* Chief Judge Robert Murphy, for the Court, said:

> We first noted that:
>
> > "In a purely philosophical sense it can be said, understandably, that all violations of the law, by their very

---

4. In *Conway v. State,* 7 Md.App. 400, 413, 256 A.2d 178 (1969), this Court said in *dicta* that "we think it clear that a prior conviction for assault with intent to rape may be shown to impeach credibility." *Conway* was decided prior to 1992—when Rule 1–502 (the predecessor to Rule 5–609) went into effect. When *Conway* was decided, precedent existed that suggested that infamous crimes included crimes involving "moral turpitude." *See Prout,* 311 Md. at 360–62, 535 A.2d 445. But the *Prout* majority held that whether a crime involved moral turpitude was immaterial for purposes of the impeachment rule.

 *Watson* was decided on the same day as *Prout,* and in *Watson* the Court said that attempted rape was not a felony at common law or a *crimen falsi,* and thus was not an "infamous crime." 311 Md. at 375, 535 A.2d 455. The *Watson* Court said in a footnote that it did not decide whether the crime of assault with intent to rape was a crime relevant to credibility.

 It is therefore not at all clear that a conviction of assault with intent to rape is relevant to credibility.

nature, involve some element of dishonesty. Thus, one could argue that jay walking, spitting on a sidewalk, running a red light or a stop sign, and exceeding the speed limit, however slightly, are 'dishonest' because they involve acts for which one can be punished by the State or its subdivisions."

*Gregory v. State*, 616 A.2d 1198, 1204 (Del.1992). Nevertheless, we have determined that certain crimes have little or no bearing on credibility and consequently are not admissible for impeachment purposes. *See, e.g., Morales[ v. State ]*, 325 Md. [330,] 339, 600 A.2d 851 [ (1992) ] (possession of PCP, assault and battery, disorderly conduct, and motor vehicle offenses); *Lowery v. State*, 292 Md. 2, 2, 437 A.2d 193 (1981) (possession of barbiturates); *Ricketts v. State*, 291 Md. 701, 713–14, 436 A.2d 906 (1981) (indecent exposure). *See also Wallach v. Board of Education*, 99 Md.App. 386, 391–92, 637 A.2d 859 (1994)(holding that a prior conviction for conspiracy to distribute marijuana is not admissible for impeachment purposes).

335 Md. at 215, 642 A.2d 870.

In *Prout*, 311 Md. at 364, 535 A.2d 445, the Court observed that "acts of violence generally have little, if any, bearing on honesty and veracity." Earlier, in *State v. Duckett*, 306 Md. 503, 511–12, 510 A.2d 253 (1986), the Court had before it the issue of whether the fact that a defendant had been convicted of assault and battery affected his credibility. The Court held that it did not, saying:

Although there may be some circumstances where one who has committed a battery has done an act so devoid of regard for societal norms and values so as to render his credibility suspect, we cannot say, just from the name of the crime as assault or assault and battery, that the witness has committed such an act. Indeed, as one court noted, "[a]cts of violence ... which may result from a short temper, a combative nature, extreme provocation, or other causes generally have little or no direct bearing on honesty or veracity." *Gordon v. United States*, 127 U.S.App.D.C. 343, 346, 383 F.2d 936, 940 (1967), *cert. denied*, 390 U.S. 1029, 88

S.Ct. 1421, 20 L.Ed.2d 287 (1968). We agree. There is no basis in logic to say that a propensity to engage in fisticuffs amounts to a predilection to lie.

Although the crime of assault with intent to murder is far more serious than the crime discussed in *Duckett*, the fact that an accused has committed such a crime does not tell us anything about the truth telling propensity of the accused. There is simply no relationship between the disposition to commit such a crime and the disposition to be untruthful. History records many examples of persons who (as far as can be determined) were truthful yet who were guilty of this crime. For instance, our seventh president, Andrew Jackson, engaged in thirty-five duels in his lifetime, killing five men, and undoubtedly intending to kill many others.

Many assaults with intent to murder are committed due to inebriation, bad temper, or jealousy—or a combination of all three. Because it cannot be said, as a generalization, that persons who are guilty of the crime of assault with intent to murder are likely to be dishonest, trial judges should not admit evidence of such convictions for impeachment purposes.

The State contends that the issue of whether the crime of assault with intent to murder was an infamous crime or a crime relevant to the witness's credibility was not preserved for our review because, in defense counsel's oral argument in support of the motion *in limine*, the issue was not mentioned. As the State points out, when a party at trial specifies a ground for an objection, that party cannot, on appeal, advance a separate ground not presented to the trial court. *Great Coastal Express, Inc. v. Schruefer*, 34 Md.App. 706, 724, 369 A.2d 118 (1977). Here, however, we cannot be certain as to whether the issue was raised below because, in addition to oral argument, the motion was supported by a written memorandum—which is not in this record. Because we cannot determine whether the issue was raised below, we will assume, *arguendo*, that it was not.

This leads us to decide an issue that indisputably *was* raised below, i.e., whether the trial judge, in applying the

balancing test set forth in Rule 5–609, should have granted the motion *in limine* and excluded from evidence the assault with intent to murder conviction.

In *Jackson,* the Court of Appeals set forth guidelines for the trial judge to consider in weighing the probative value of a past conviction against its prejudicial effect:

These factors are (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility.

340 Md. at 717, 668 A.2d 8.

The impeachment value of the crime of assault with intent to murder is close to zero. It would be zero except for the proposition that "in the philosophical sense" all violations of the law involve some element of dishonesty. *Giddens,* 335 Md. at 215, 642 A.2d 870.

The second factor is relatively neutral. The conviction for assault with intent to murder occurred eight years previously, *i.e.,* not exactly ancient history, yet not recent either.

The third factor is strongly in appellant's favor because there was a very pronounced similarity between the murder charge that the appellant faced and the crime of assault with intent to murder. Because of the similarity in crimes, there was a great likelihood that the jury would use the prior conviction for an improper purpose, i.e., to prove the likelihood that affiant committed the crime for which he stood accused. A juror might well conclude that the only real difference between the prior crime and the present one was that here the murder succeeded, while previously the defendant was unsuccessful.

The fourth factor (importance of the witness's testimony) and fifth (centrality of the defendant's credibility) would favor the State if the prior conviction truly impacted upon the witness's credibility. The appellant's testimony was very im-

portant because his entire defense rested upon the hope that the jury would believe his testimony that he acted in self-defense. But in this case, these two factors clearly do not weigh in favor of the State because the prior conviction had so little value in judging appellant's credibility.

We recognize that trial judges are vested with wide discretion in ruling upon the propriety of questions on cross-examination. *Coleman v. State*, 321 Md. 586, 609, 583 A.2d 1044 (1991). Moreover, in rulings which involve impeachment by prior convictions, appellate relief may be triggered only when a trial judge abuses his or her discretion. *Jackson*, 340 Md. at 719, 668 A.2d 8. But here, we believe the trial judge did abuse his discretion and that appellant was prejudiced as a result.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR NEW TRIAL; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**