65 A.3d 730

**Candus THURMAN**

v.

**STATE of Maryland.**

**No. 1729, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

May 2, 2013.

456

Amy E. Brennan, (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Robert Taylor, Jr., (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: EYLER, DEBORAH S., MEREDITH and ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

MEREDITH, J.

Candus Thurman, appellant, was charged in the Circuit Court for Prince George's County with attempted murder, first-degree assault, second-degree assault, armed carjacking, carjacking, robbery with a dangerous weapon, robbery, theft over $1,000, use of a handgun in the commission of a felony or crime of violence, and wearing and carrying a handgun. Following a jury trial, Thurman was convicted of first-degree assault, armed carjacking, use of a handgun in the commission of a felony or crime of violence, and wearing and carrying a handgun. The circuit court sentenced Thurman to three concurrent sentences of fifteen years' imprisonment for first-degree assault, armed carjacking, and use of a handgun in the commission of a felony or crime of violence. The conviction for wearing and carrying a handgun merged for the purposes of sentencing.

Thurman noted a timely appeal and presents two questions for our review:

1. Did the trial court err in ruling that defense counsel could not impeach [the victim's] credibility with evidence of his prior convictions for assault on a police officer and fleeing a law enforcement officer?

2. Did the trial court erroneously deny defense counsel the opportunity to re-cross examine [a State's witness]?

Finding no reversible error, we affirm the judgments of the circuit court.

## FACTS AND PROCEDURAL HISTORY

On February 23, 2010, at approximately 1:40 a.m., Cedric Bosier arrived at the Skylark, a strip club in Washington, D.C. When Bosier arrived, the club was letting out. So he talked to some people outside of the club. Bosier struck up a conversation with Thurman, and she asked him for a ride home. Thurman got in Bosier's car, and he drove toward Shadyside Apartments, which is where Thurman's cousin lived.

When they arrived at the Shadyside Apartments, Thurman indicated that she had decided to go home with Bosier. But she asked him to come with her to her cousin's apartment so she could get clothes and tell her cousin where she was going. They exited the car, and Bosier followed Thurman toward the apartment building. According to Bosier, Thurman "put her hood on because it was kind of misty that night, and then she turned around and pulled a gun on me." She said: "Give me your money and your keys." As Bosier began to retrieve his keys from his pocket, Thurman shot him. Then, Thurman drove away in Bosier's car.

After Thurman left, Bosier called 9–1–1, and walked to a nearby gas station where he was met by police. Bosier initially told the police that a man with dreads got in his car, told him to drive, and then got out of the car and shot him. He later explained that he told this story because he was embarrassed that a woman "could rob me and shoot me like that."

A few days later, Thurman called Bosier and apologized for shooting him. After he hung up the phone, Bosier called the investigating detective and gave a second statement, saying that a woman shot him.

At trial, Thurman testified and told a version of events that was quite different from Bosier's. Although there are significant discrepancies between the stories, sufficiency of the evidence is not raised on appeal, and therefore, we simply note that the defense's theory was that Thurman acted in self

defense because she felt that Bosier was pressuring her for sex, and she feared that he was going to sexually assault her.

Additional facts will be discussed below as they pertain to each question presented.

## DISCUSSION

### I.

During the cross-examination of Cedric Bosier, defense counsel attempted to impeach Bosier by introducing evidence of some of his prior convictions. The trial judge sustained the State's objections when defense counsel asked Bosier to admit that he had been previously convicted of assault on a police officer, threat to do bodily harm, and reckless endangerment. Defense counsel then asked to approach the bench and the following colloquy occurred:

[DEFENSE COUNSEL]: Certainly, Your Honor, reckless endangerment is a crime that goes to moral turpitude.

COURT: I don't think so.

[DEFENSE COUNSEL]: Well, it's not a second degree— I'm not asking about a second degree assault—

COURT: I understand. I don't consider reckless endangerment a term of moral turpitude.

[DEFENSE COUNSEL]: Well, it's a little more egregious. It's in the area of aggravated—as a type of assault. It carries a five-year felony [sic].

COURT: Well, reckless endangerment is not a felony.

\* \* \*

[DEFENSE COUNSEL]: Okay. He also has a conviction for fleeing from a police officer in the District of Columbia.

COURT: Not a crime of moral turpitude.

The court then asked defense counsel to proffer all of the convictions he sought to use for impeachment, and counsel described the witness's convictions as follows:

[DEFENSE COUNSEL]: Okay. The reckless endanger-
ment is in CT96–1047X. He had a conviction on June 19,
1997. He was convicted of assault and battery, which I
agree, I didn't ask him about that. But, also, he was
convicted of reckless endangerment in that particular
case.

Then he was convicted in 2006, CMD, which is the case
number, 020246, in the District of Columbia. He was
convicted of assault on a police officer and threats to do
bodily harm. That conviction was on April 22, 2008.
He also has another conviction in the District of Colum-
bia—if I can just get it?

COURT: Um-hmm.

[DEFENSE COUNSEL]: Which is fleeing a law enforce-
ment officer, which is a misdemeanor under D.C. law.
That was in 2007, CF210—0012601. I believe all those
are the impeachable convictions.

[STATE]: The State objects for the record, for obvious
reasons.

COURT: All right. I do not consider them crimes of moral
turpitude as they're used for impeachment under Mary-
land law. . . .

Thurman contends on appeal that "the trial court erred in
concluding that neither [the witness's conviction for] assault on
a police officer nor fleeing a law enforcement officer was
admissible for impeachment purposes." Thurman acknowl-
edges that no Maryland reported opinion has addressed
whether these crimes are relevant to credibility, but argues
that these crimes "each contain an element of contempt or
disrespect for law enforcement and the rule of law." Thur-
man asserts that "the very nature of the crimes bears on
credibility and may reasonably reflect one's status as a scof-
flaw, who might not take seriously the witness's oath." [1]

---

1. Thurman does not argue on appeal that the trial court erred in
 excluding evidence of the witness's convictions for reckless endanger-
 ment and threats to do bodily harm. She states in her brief:

The State responds that the trial court properly excluded the proffered evidence of the convictions. The State quotes the following statement from *Prout v. State*, 311 Md. 348, 363, 535 A.2d 445 (1988):

> [W]e think the law of this state may be generally summarized as holding that to be admissible for impeachment purposes a conviction must be either a felony at common law or a *crimen falsi* and thus infamous, or a lesser crime bearing upon the witness's credibility.

Noting that the adoption of Maryland Rule 5–609 has not altered this limitation on the use of convictions for impeachment, the State emphasizes: "None of the convictions were for felonies. None of them involved theft, fraud, or deceit. None of them was a *'crimen falsi,'* a 'crime of falsifying.' " The State further contends that the mere fact that the convictions involved offenses against police officers did not elevate the convictions' relevance to the witness's credibility. The State asserts:

> No court in Maryland has ever held that a crime that is not otherwise a qualifying offense becomes "relevant to the witness's credibility" if the conduct involved a police officer. There has never even been a hint of such a definition.... [O]nly misdemeanors which directly relate to a propensity

---

Maryland recognizes that "certain crimes have little or no bearing on credibility and consequently are not admissible for impeachment purposes." *Fulp v. State*, 130 Md.App. 157, 166, 745 A.2d 438 (2000). Violent acts generally have little bearing on credibility, *id.* at 166–167 [745 A.2d 438] (internal citations omitted), but *Fulp* emphasized that, "[t]o determine the nature of the crime that led to the prior conviction, the trial court should focus on the elements needed to prove the offenses for which the witness was convicted and not upon the particular facts surrounding that conviction." 130 Md.App. at 164 [745 A.2d 438]. Although no Maryland case has specifically decided whether a conviction for threats to do bodily harm or reckless endangerment is admissible for impeachment purposes, *State v. Duckett*, 306 Md. 503, 510 A.2d 253 (1986) (a conviction for battery is not admissible for impeachment purposes), and *Fulp, supra*, (trial courts should not admit convictions for assault with intent to murder for impeachment purposes) strongly suggest that these two crimes are not admissible for impeachment purposes in Maryland.

for fraud, deception, or dishonesty may be considered for impeachment purposes.

(Footnote omitted.)

We agree with the State's contention that neither of Bosier's misdemeanor convictions was properly admissible for impeaching him.

Maryland Rule 5–609 addresses the use of prior convictions to impeach a witness. The rule provides in pertinent part:

(a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) **Time Limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

The Court of Appeals has described a three-part test for determining whether a witness may be impeached with evidence of a prior conviction offered under Rule 5–609:

First, **subsection (a) sets forth the eligible universe for what convictions may be used to impeach a witness's credibility. This universe consists of two categories: (1) infamous crimes and (2) other crimes relevant to the witness's credibility. Infamous crimes include treason, common law felonies, and other crimes classified as *crimen falsi.* If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends. This threshold question of whether or not a crime bears upon credibility is a matter of law.** If a crime falls within one of the two categories in the eligible universe, then the second step is for the proponent to establish that the conviction was not more than 15 years old, that it was not reversed on appeal, and that it was not the subject of a

pardon or a pending appeal. Finally, in order to admit a prior conviction for impeachment purposes, the trial court must determine that the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party. This third step is clearly a matter of trial court discretion.

*King v. State,* 407 Md. 682, 698–699, 967 A.2d 790 (2009) (quoting *State v. Westpoint,* 404 Md. 455, 477–478, 947 A.2d 519, (2008)) (emphasis added) (internal quotation marks omitted).

■ The Court of Appeals has said that a conviction that bears upon a witness's credibility is one where "the crime itself, by its elements ... clearly identif[ies] the prior conduct of the witness that tends to show that he is unworthy of belief." *Westpoint, supra,* 404 Md. at 484, 947 A.2d 519 (citing *State v. Giddens,* 335 Md. 205, 218, 642 A.2d 870 (1994)). The Court of Appeals has also observed that "a crime [such as cocaine distribution] tends to show that the offender is unworthy of belief" because it is widely known that a narcotics trafficker "lives a life of secrecy and engages in dissembling in the course of [the crime], being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *Id.* (quoting *Giddens, supra,* 335 Md. at 217, 642 A.2d 870) (internal quotations omitted). Although, in a "purely philosophical sense it can be said, understandably, that all violations of the law, by their very nature, involve some element of dishonesty[,] ... certain crimes have little or no bearing on credibility and consequently are not admissible for impeachment purposes." *Id.* at 483, 947 A.2d 519 (quoting *Giddens, supra,* 335 Md. at 215, 642 A.2d 870) (internal quotation marks omitted). Applying that analysis in *Westpoint,* the Court held that a conviction for a third degree sexual offense was not admissible for impeachment of credibility. *Id.* at 486, 947 A.2d 519. The Court noted that, even though "an individual who is convicted of a third degree sexual offense usually acts in 'secrecy,' that, in an[d] of itself, is not sufficient to render the prior conviction admissible for the purpose of impeachment." *Id.* (citing *Morales v. State,* 325

Md. 330, 339, 600 A.2d 851 (1992); *Lowery v. State*, 292 Md. 2, 2, 437 A.2d 193 (1981)).

As the State points out in the present case, neither assault on a police officer nor fleeing a law enforcement officer is a felony or infamous crime. It appears that no Maryland appellate court has addressed whether a prior conviction for the specific crime of assault on a police officer has sufficient relevance to a witness's credibility that such a conviction should be admissible for impeachment purposes. Maryland courts have, however, addressed the admissibility of convictions for other types of assault.

In holding that the crime of assault and battery had little or no bearing on a witness's credibility, the Court of Appeals has noted that " '[a]cts of violence . . . [,] which may result from a short temper, a combative nature, extreme provocation, or other causes[,] generally have little or no direct bearing on honesty or veracity.' " *State v. Duckett*, 306 Md. 503, 512, 510 A.2d 253 (1986) (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968)).

Similarly, in *Fulp v. State*, 130 Md.App. 157, 167, 745 A.2d 438 (2000), we addressed whether the crime of assault with intent to murder was admissible under Rule 5–609. In reaching the conclusion that the conviction was inadmissible to impeach credibility, we explained:

> [T]he fact that an accused has committed such a crime does not tell us anything about the truth telling propensity of the accused. There is simply no relationship between the disposition to commit such a crime and the disposition to be untruthful. . . . Because it cannot be said, as a generalization, that persons who are guilty of the crime of assault with intent to murder are likely to be dishonest, trial judges should not admit evidence of such convictions for impeachment purposes.

*Id.*

In our view, the rationale of the cases excluding the use of assault convictions for impeachment purposes applies with

equal force to a conviction for assault upon a law enforcement officer. There is nothing inherent in the elements of the offense that bears directly on the likelihood that the offender would lie under oath.

We reach a similar conclusion with respect to the offense of fleeing from a law enforcement officer. Although there may be some instances when the flight from a police officer is motivated by a desire to avoid the consequences of dishonesty, deception is not an element of the crime, and it cannot be said, as a generalization, that persons convicted of that offense are likely to lie under oath.

We hold, therefore, that the circuit court did not err in finding that Bosier's prior convictions were inadmissible for impeachment purposes.

## II.

At the conclusion of defense counsel's cross-examination of Bosier, the trial judge informed the parties that it was his policy not to permit any re-cross examination of any witness:

> I advise the parties that I do not permit recross after redirect. So if there's any problem with the scope of a question brought up in redirect, please make your objection in a timely manner or I'm going to deem that you are waiving the scope objection. That applies for all witnesses throughout this trial.

The trial court's announced policy of not allowing re-cross examinations was applied to preclude defense counsel's re-cross examination after the State's redirect examination of Detective Darin Rush. During the cross-examination of Detective Rush, defense counsel had elicited testimony that Thurman said to the detective: "[Bosier] was walking behind me. I thought he was going to grab me. I got bruises on me. I just can't believe what happened[.]" On redirect, the State asked Detective Rush to clarify that Thurman had said "that she thought [Bosier] was going to grab her," implying that the physical contact did not actually occur. The detective re-

sponded, "She said that, 'I thought he was going to grab me.' "
Defense counsel did not raise any objections during the State's
brief redirect examination but proposed limited re-cross.
When defense counsel approached the bench after the redirect
examination of Detective Rush, the following discussion oc-
curred at sidebar:

[DEFENSE COUNSEL]: She, in fact, did say, "I fought
him back." So at some point in the statement [she gave
to Detective Rush] she's describing a struggle between
her and [Bosier].

COURT: Okay, and?

[DEFENSE COUNSEL]: I'd like to ask him that.

COURT: No.

[DEFENSE COUNSEL]: Well, that was brought up—

COURT: There is no recross.

[DEFENSE COUNSEL]: I know, but I thought you said
there was no recross—

COURT: There is no recross after redirect. If there's a
problem with the scope of a question brought up in
redirect, make your objection in a timely manner, or I'm
going to deem that you're waiving the scope objection.

[DEFENSE COUNSEL]: But it's a matter that wasn't
brought up on cross, the fight. He's saying—

COURT: No, that question was a redirect question. It was
beyond the scope of cross.

Thurman contends that the trial court erred by denying her
the opportunity to re-cross examine Detective Rush for the
limited purpose of clarifying a matter addressed during redi-
rect. The State responds that the trial court did not abuse its
"discretion to control the manner and order of the interroga-
tion of witnesses." (Citing Maryland Rule 5–611; *Oken v.
State*, 327 Md. 628, 669, 612 A.2d 258 (1992); and *Daniel v.
State*, 132 Md.App. 576, 583, 753 A.2d 545 (2000)). Further,
the State argues that any error was harmless.

Although Rule 5–611 addresses the order of interrogation of
a witness and the scope of cross-examination, the rule makes

no mention of either redirect examination or re-cross examination. The two germane subsections of Rule 5–611 provide as follows:

(a) **Control by Court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) **Scope of Cross–Examination.**

(1) Except as provided in subsection (b)(2), cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. Except for the cross-examination of an accused who testifies on a preliminary matter, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

(2) An accused who testifies on a non-preliminary matter may be cross-examined on any matter relevant to any issue in the action.

*See generally Myer v. State,* 403 Md. 463, 476, 943 A.2d 615 (2008) ("Trial courts are granted broad discretion under Md. Rule 5–611(a) to control the mode and order of the interrogation of witnesses and the parties' presentation of evidence.... We review an exercise of this authority for abuse of discretion."); *Simmons v. State,* 392 Md. 279, 296, 896 A.2d 1023 (2006) ("Managing the scope of cross-examination is a matter that falls within the sound discretion of the trial court.").

There appears to be a dearth of Maryland case law discussing the right of redirect and re-cross examinations.[2] In her

---

2. Under circumstances that were quite different from the procedural posture under which Thurman made her request for re-cross examination of a witness, the Court of Appeals found reversible error in a trial court's refusal to permit cross examination of a witness who was recalled in response to a jury question during the course of jury deliberations in *Dyson v. State,* 328 Md. 490, 504–05, 615 A.2d 1182

treatise on Maryland evidence, Professor Lynn McLain provides the following description of the normal order for examination of witnesses:

### f. Order of Examinations of a Witness

When evidence is presented by the live testimony of a witness, it will proceed in the following order:

(1) Direct examination by the party calling the witness;

(2) Cross-examination (if any) by the opposing party, as to credibility of the witness and, generally, as to substantive matters addressed on direct; and

(3) Redirect examination (as to matters brought out on cross).

Subsequent examinations, such as re-cross and re-redirect, may be allowed, as to matters brought out on the opponent's immediately preceding examination. The court has discretion to permit counsel to exceed the scope of the preceding examination, however.

Whether a party may recall a witness for further direct or cross after having conducted direct or cross-examination of the witness is within the trial court's discretion.

5 LYNN MCLAIN, MARYLAND PRACTICE, MARYLAND EVIDENCE § 300:2 at 269 (2d ed.2001) (footnotes omitted). Professor McLain's treatise also notes in Volume 6, § 611:11 at 602 that, "[i]n federal court, as in state court, the same rules apply to restrict the scope of redirect to the scope of cross, re-cross to the scope of new matter brought out on redirect, and so forth, as apply to the scope of cross." (Footnotes omitted.)

In the MARYLAND EVIDENCE HANDBOOK § 1207 at 574 (4th ed.2010), this Court's former Chief Judge, Joseph F. Murphy,

---

(1992). Because the witness had already testified and been cross examined during the trial, the situation when she was recalled as a witness and the defendant requested the opportunity to pose questions was analogous to re-cross examination. Without specifically mentioning a right of re-cross, the Court of Appeals held that, when the trial court refused to permit additional questions, "the defendant was denied the opportunity to cross-examine the witness." *Id.* at 505, 615 A.2d 1182.

Jr., includes the following observations about redirect and recross examination:

### § 1207 Redirect and Recross Examination.

In theory, redirect examination should be limited to explanations and replies to any new matters brought up during cross-examination, while recross examination should be further limited to new matters brought up during redirect. These theoretical niceties, however, cannot always be observed. Given the ebb and flow of testimony, it would often be impractical, and sometimes unfair, for the trial judge to sustain "beyond the scope" objections. Absent the most outrageous, unfairly prejudicial ambush, the trial judge will not be reversed for permitting a violation of the "scope of redirect-recross" rule. This recognition is found in *Fisher Body Div. v. Alston,* 252 Md. 51, [56,] 249 A.2d 130[, 133] (1969), when the Court of Appeals held:

As a general rule, redirect examination must be confined to matters brought out on cross-examination. However, it is within the court's discretion to allow the introduction of something new or forgotten if the purposes of justice seem to demand it, and this court will not interfere unless there is a clear abuse of such discretion.

*See also Pineta v. State,* 98 Md.App. 614, 624, 634 A.2d 982 (1993) (objection sustained to questions on re-cross that "exceeded the scope of redirect").

 Although we glean from these authorities the general principle that trial courts have broad discretion to control the presentation of evidence, we have been directed to no case that holds that it is an appropriate exercise of that discretion for a court to adopt a predetermined policy that permits redirect examination but never allows follow up questions to be asked on re-cross. Because of the great variation in circumstances that can arise during trials, it is not appropriate for a trial judge to determine before ever hearing the redirect examination that no re-cross examination will be permitted. As the Court of Appeals observed in *Gunning v. State,* 347 Md. 332, 352, 701 A.2d 374 (1997): "[A] court errs when it

attempts to resolve discretionary matters by the application of a uniform rule[ ] without regard to the particulars of the individual case."

■ Several federal cases have held that, although Federal Rule of Evidence 611 (like Maryland Rule 5–611) grants trial courts broad discretion to control the examination of witnesses, it is an abuse of that discretion for the court to prohibit re-cross if new matter has been brought out on redirect examination. In *United States v. Caudle*, 606 F.2d 451, 459 (4th Cir.1979), the Fourth Circuit Court of Appeals noted that a "trial court does not have discretion to curtail cross-examination until after the questioner has had a reasonable chance to pursue the matters raised on direct." The court held that the trial court's discretion to control re-cross examination was subject to a similar limit, stating, *id.* at 457– 58:

> In this case, issue is taken with the trial court's limitation of recross examination. However, the reasons we have given in support of the right of cross-examination apply with equal strength to recross examination where new matter is brought out on redirect examination. Examining counsel is normally expected to elicit everything from a witness, so far as possible, at the first opportunity. Where, as here, new matter is brought out on redirect examination, the defendant's first opportunity to test the truthfulness, accuracy, and completeness of that testimony is on recross examination. 6 Wigmore, *Evidence* § 1896 (Chadbourn rev.1976); McCormick, *Evidence* § 32 (1972). To deny recross examination on matter first drawn out on redirect is to deny the defendant the right of any cross-examination as to that new matter. The prejudice of the denial cannot be doubted.

The Third Circuit Court of Appeals expressed a similar view in *United States v. Riggi*, 951 F.2d 1368, 1375 (3d Cir.1991). The court there noted, *id.*:

> In the case before us, by reason of the district court's policy forbidding recross-examination, new information elicited on redirect examination was not subjected to recross-

examination by defense counsel. When material new matters are brought out on redirect examination, the Confrontation Clause of the Sixth Amendment mandates that the opposing party be given the right of recross-examination on those new matters.

The *Riggi* court explained: "Recross is to redirect as cross-examination is to direct. To allow redirect examination on new material but deny recross on the same material is to violate both the Confrontation Clause and fundamental principles of fairness." *Id.* The court concluded: "The district court erred in imposing its blanket prohibition on recross-examination. It is well settled that if a new subject is raised in redirect examination, the district court must allow the new matter to be subject to recross-examination." *Id. Accord O'Brien v. Dubois,* 145 F.3d 16, 26–27 (1st Cir.1998), *overruled on other grounds, McCambridge v. Hall,* 303 F.3d 24 (1st Cir.2002); *United States v. Vasquez,* 82 F.3d 574, 576 (2d Cir.1996); *United States v. Ross,* 33 F.3d 1507, 1518 (11th Cir.1994); *United States v. Baker,* 10 F.3d 1374, 1404 (9th Cir.1993), *overruled on other grounds, United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000).

Nevertheless, although we agree with Thurman's contention that the trial judge's unyielding imposition of a blanket prohibition against re-cross examination constituted an abuse of discretion, we must consider whether the court's error was harmless. *Owens v. State,* 161 Md.App. 91, 111, 867 A.2d 334 (2005) ("If the examination was erroneously restricted, we then apply a harmless error standard of review"). We are persuaded that the error was harmless in this case because it "in no way influenced the verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). The same information that defense counsel sought to elicit during the proposed re-cross examination of Detective Rush was established through other witnesses during the course of the trial. Detective Tariq Hall, for example, testified during cross-examination that Thurman talked to him about a struggle. Our belief that Thurman was not prejudiced by being precluded from pursuing the proposed re-cross of Detective Rush is also supported by the fact that

Thurman's own testimony at trial did not assert that she fought back in a struggle with Bosier. Because the statement she had given Detective Rush, referring to a struggle, was at odds with her own trial testimony about the incident, we are convinced beyond a reasonable doubt that she was not prejudiced by the trial court's refusal to allow re-cross examination of the detective.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, AFFIRMED. COSTS TO BE PAID BY APPELLANT.**