947 A.2d 519

**STATE of Maryland**

v.

**Christopher Overbee WESTPOINT.**

**No. 60 Sept.Term, 2007.**

Court of Appeals of Maryland.

May 8, 2008.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland., on brief), Baltimore, MD, for petitioner/cross-respondent.

Michael R. Malloy, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, MD, for respondent/cross-petitioner.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JJ., and ALAN M. WILNER and DALE R. CATHELL, JJ. (Retired, specially assigned).

BATTAGLIA, Judge.

In this case we will address whether a prior conviction for a third degree sexual offense is admissible for purposes of impeachment pursuant to Rule 5–609 [1] of the Maryland Rules

---

1. Rule 5–609 provides:

   (a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted o f a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of

of Evidence,[2] as well as whether the trial court erred in admitting other crimes, wrongs or acts evidence under Rule 5–404(b),[3] specifically, that Respondent, Christopher Overbee Westpoint, the defendant below, had committed a third degree sexual offense on the same victim, similar to the acts for which he was indicted.

The State filed a Petition for Writ of Certiorari, raising the following question for our review:

Is a prior conviction for a third degree sexual offense admissible pursuant to Rule 5–609 for purposes of impeachment?

Westpoint filed a Conditional Cross–Petition, presenting us with three additional questions:

1. Did the trial Court err by admitting evidence that Respondent previously had committed a similar "other crime" on the same alleged victim and had been convicted for it?

---

admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) **Time limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

(c) **Other limitations.** Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:

(1) the conviction has been reversed or vacated;

(2) the conviction has been the subject of a pardon; or

(3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

(d) **Effect of plea of nolo contendere.** For purposes of this Rule, "conviction" includes a plea of nolo contendere followed by a sentence, whether or not the sentence is suspended.

2.  Hereinafter all citations to rules will be to the Maryland Rules of Evidence, unless otherwise noted.

3.  Rule 5–404(b) provides:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

2. Did the trial Court err by overruling Respondent's objection to its jury instruction that Respondent's guilty plea to the prior sexual offense could be used to prove his intent to commit rape and child abuse in the instant case?
3. Did the trial Court err by overruling Respondent's objection to the prosecutor's argument that the jury should believe the complainant because Detective Pyles had believed her?

We shall hold that the prior conviction for a third degree sexual offense is not admissible for purposes of impeachment. Because the issue of the admission of the other acts evidence may arise on retrial, we will address it for guidance.[4]

## Background

Respondent, Christopher Overbee Westpoint, was indicted for various sexual offenses that allegedly occurred on March 7th, 8th, 11th and 16th, 2005.[5] The victim of the alleged sexual offenses was Westpoint's twelve-year-old daughter. The charges relating to occurrences on March 7th and 8th were third degree sexual offenses in violation of Section 3–307 of the Criminal Law Article, Maryland Code (2002),[6] fourth degree sexual offenses in violation of Section 3–308, and second degree assaults in violation of Section 3–203. The offenses charged related to the incident on March 11th were a third degree sexual offense, a fourth degree sexual offense, a second degree assault and sexual abuse of a minor in violation of Section 3–602. The charges related to the incident on March 16th were second degree rape in violation of Section 3–

---

**4.** As we shall hold that a prior conviction for a third degree sexual offense is not admissible for purposes of impeachment, we need not and will not address Westpoint's second and third questions.

**5.** On the first day of the jury trial, Westpoint's daughter, the alleged victim, testified, but she could not remember what, if anything, occurred on March 8th or 11th. After the State rested, the judge granted Westpoint's motion for judgment of acquittal as to the counts involving those dates.

**6.** All statutory references are to the Criminal Law Article, Maryland Code (2002), unless otherwise noted.

304, sexual abuse of a minor, a third degree sexual offense, a fourth degree sexual offense and a second degree assault.

Prior to trial, the State filed a motion *in limine* in support of the admission of other crimes, wrongs or acts evidence pursuant to Rule 5–404(b), specifically that Westpoint had committed a similar third degree sexual offense against his daughter in November of 2001, to which he pled guilty;[7] the State proffered to the trial judge that it had a certified copy of the conviction. The motion was argued on the first day of the jury trial; Westpoint asserted that the other acts evidence should not be admitted because the probative value of the evidence was outweighed by its extreme and unfair prejudice. The judge reserved his decision, and after opening statements, ruled that the other crimes, wrongs or acts evidence was admissible, substantively, to prove Westpoint's intent:

[THE COURT]: Okay. The State is seeking to use evidence of a prior conviction—

[STATE]: Yes, Your Honor.

[THE COURT]:—of the Defendant for having committed a third degree sexual offense on the same complaining witness.

[STATE]: That's correct, Your Honor.

[THE COURT]: That earlier conviction was in 2001.

[STATE]: Yes.

[THE COURT]: And, normally, the evidence of other crimes cannot be used, but there is an exception, and that exception is expounded upon in the case of *Antonio Donnell Oesby, O–E–S–B–Y, v. State of Maryland,* decided January 4th, 2002, Court of Special Appeals, Moylan, found at 142 Maryland Appeals, Page 144[, 788 A.2d 662]. And it lists that there first must be a determination, a legal determina-

---

7. The record reflects that in 2002 Westpoint entered an Alford plea, *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which we have defined as "a guilty plea containing a protestation of innocence." *See Marshall v. State,* 346 Md. 186, 189 n. 2, 695 A.2d 184, 185 n. 2 (1997); *Pennington v. State,* 308 Md. 727, 728 n. 1, 521 A.2d 1216, 1216 n. 1 (1987).

tion by the court that the evidence qualifies for admission having fallen within one of the exceptions that are recognized as having relevance to the case at bar, and one of those exceptions is intent. Here you have intent, which is an element, and you have a prior act by the same defendant on the same individual child, so there is the intent exception as it's determined by the Court.

A second step in the process has to do with whether or not the evidence of the prior bad act or prior conviction is clear and convincing, and the Court finds that the evidence is more than clear and convincing.

[COUNSEL FOR WESTPOINT]: Based on what, Your Honor?

[THE COURT]: Based upon the fact that he entered a plea of guilt to having committed the third degree sexual offense even though that plea of guilt was in an effort to avoid a more serious charge of second degree rape on that same child. I believe that must have been the earlier more serious count in entering a plea of guilt.

And the third step is the question, whether or not the probative value of the other crimes evidence outweighs its unfairly prejudicial effect. The Court believes that the other crimes evidence would outweigh the unduly prejudicial effect that it would have in this case, so I'll permit it.

At trial, Westpoint's daughter, the alleged victim, took the witness stand and testified about the incidents on March 7th and 16th, but she could not remember what, if anything, occurred on March 8th or 11th, 2005. In regard to the March 16th event, she testified regarding various of her father's actions:

[WESTPOINT'S DAUGHTER]: My father came downstairs and tapped me on my hip with his foot, and that's when I had got off. And we went upstairs and we started playing chase. We went upstairs in my room and then he laid me on my bed and he got on top of me. That's when he pulled my pants down and got on his knee off the bed and put his finger in his mouth and put his finger on my vagina,

and that's when he got back on top of me and he tried to force his self in me.

Then I was over there and saying, ow. And that's when my father said, did that hurt. And he turned me on my stomach and got on me and started humping me on my stomach while I was laying on my stomach.

[STATE]: Now let's go back for a second. You say your father tried to put—now, were his pants on or off when he did this?

[WESTPOINT'S DAUGHTER]: His pants were on. He had on shorts.

[STATE]: What were you wearing?

[WESTPOINT'S DAUGHTER]: I was wearing—still in my pajamas.

[STATE]: Okay. And how did you say your father put his finger in your vagina? Were you pants on? Were your pants off?

[WESTPOINT'S DAUGHTER]: No. He pulled them down.

[STATE]: Okay. And you said he put his finger inside your vagina?

[WESTPOINT'S DAUGHTER]: Yes.

[STATE]: Okay. What did he do after that?

[WESTPOINT'S DAUGHTER]: He got back on top of me and he tried to put his penis inside of me.

[STATE]: Were his pants on or off at this point?

[WESTPOINT'S DAUGHTER]: They were on, but it was like how the boxers are made with a little hole that comes apart.

[STATE]: Okay. So you said he tried to put his penis inside?

[WESTPOINT'S DAUGHTER]: Yes.

[STATE]: Did he put it in there?

[WESTPOINT'S DAUGHTER]: A little, but not with any real penetration.

[STATE]: I'm sorry. What?

[WESTPOINT'S DAUGHTER]:  Not as far as like where I lost my virginity.  It wasn't all the way in.

[STATE]:  But it was a little bit in?

[WESTPOINT'S DAUGHTER]:  Yes.

[STATE]:  You said ow?

[WESTPOINT'S DAUGHTER]:  Yes, a little.  He look at me and said, did that hurt.  And I said, yes, and then he turned me on my stomach and he was on my back and he was humping me.

[STATE]:  [Westpoint's daughter], what do you mean by humping?

[WESTPOINT'S DAUGHTER]:  He had his penis on my vagina moving up and down.

The State thereafter questioned the daughter regarding what had occurred in 2001:

[STATE]:  Okay. Now, [Westpoint's daughter], I'm going to ask you about an incident that occurred back in October of 2001, October, November, 2001?  Do you remember that? [WESTPOINT'S DAUGHTER]:  Yes.

\* \* \*

And my mom told me to go with my aunt.  And I had went down to the apartment to get some clothes and my dad had just came home from work and we were in the back room. I was getting clothes and stuff.  And that's when we were watching t.v. for a minute and talking and stuff and that's when we had laid down in the bed and I was—he laid me on my stomach and got on top of me and started moving up and down.

My pants and panties were down and his boxers—well, not boxers, but his shorts and stuff, and his penis was rubbing against me and he had hurt me.  So after that, I had left and I ran upstairs and told my aunt and everything and that's when she called—that's when she first called the police.

[STATE]: [Westpoint's daughter], now when you say that his penis was rubbing up against you, what part of your body was his penis rubbing on?

[WESTPOINT'S DAUGHTER]: Like around my behind and my vagina.

[STATE]: And, [Westpoint's daughter], that time, how did your pants and panties get off?

[WESTPOINT'S DAUGHTER]: He pulled them down.

The next day, after a motion for judgment of acquittal was granted regarding the counts involving March 8th and 11th, Westpoint testified. On cross-examination, the State sought to impeach Westpoint with his 2002 prior conviction for third degree sexual offense arising from the 2001 incident, arguing that the conviction was admissible under Rule 5–609 because it was for a crime relevant to credibility. Westpoint objected. The judge ruled that the prior conviction evidence was admissible for impeachment:

[STATE]: Now, you said that on direct examination once you were confronted your thought was, I'm, not going through this again, correct?

[WESTPOINT]: Yes.

[STATE]: That's because you've been through this before, right?

[WESTPOINT]: Yes.

[STATE]: In fact, you went and did this before in November of 2001?

[COUNSEL FOR WESTPOINT]: Objection.

[THE COURT]: Overruled.

[WESTPOINT]: Yes, I have, ma'am.

[STATE]: Okay. And that was the incident [Westpoint's daughter] was testifying about yesterday when she spoke about what happened in 2001?

[COUNSEL FOR WESTPOINT]: Objection continuing, please.

[THE COURT]: Yes. Overruled.

[STATE]: Those were the incidents that [Westpoint's daughter] was talking about in 2001?

[WESTPOINT]: Yes, ma'am.

[STATE]: And those were the incidents where she claimed that you touched her and that you fondled her and, according to [Westpoint's daughter], that you humped her?

[WESTPOINT]: Yes.

[STATE]: In fact, Mr. Westpoint, the truth is that you were convicted of having done those things to [Westpoint's daughter] before?

[COUNSEL FOR WESTPOINT]: Objection.

[THE COURT]: Yes. Sustained.

[STATE]: So this is not the first time that this has come up, isn't that correct, Mr. Westpoint?

[COUNSEL FOR WESTPOINT]: Continuing objection.

[THE COURT]: Overruled. You can answer it.

[WESTPOINT]: Would you repeat the question?

[STATE]: You went to court in 2001 for these same types of events, didn't you?

[WESTPOINT]: Yes, I did.

[COUNSEL FOR WESTPOINT]: Objection, Your Honor, to that particular question.

[THE COURT]: Overruled.

[STATE]: In fact, you pled guilty to having touched [Westpoint's daughter]?

[COUNSEL FOR WESTPOINT]: Objection, Your Honor.

[WESTPOINT]: I took an Alford plea.

[THE COURT]: Approach.

[STATE]: The fact is, sir, you were convicted, were you not?

[COUNSEL FOR WESTPOINT]: Objection.

[WESTPOINT]: I don't want to say I was—

[THE COURT]: That's sustained.

[COUNSEL FOR WESTPOINT]: Your Honor, may we approach, please?

[THE COURT]: Yeah. Come up.

If you're going to use a conviction there is a way that you have to go about using a conviction. You can't just say convicted either. That doesn't mean anything. You know, convicted of what?

[COUNSEL FOR WESTPOINT]: Your Honor, I'm going to ask for a mistrial. Your Honor, counsel knows the proper way to attempt to use this and the fact that it's come out at this juncture, the way it's come out.

[THE COURT]: 2001 is Number 1, that's within. But the point is, you can't just say convicted. What was he convicted of?

[STATE]: Third degree sex offense.

[THE COURT]: All right. Now, I have to determine whether or not the conviction was a crime of moral turpitude or—

[STATE]: She's already testified to the fact -

[THE COURT]: —or to his character. She didn't testify as to his conviction.

[STATE]: She testified as to the facts.

[THE COURT]: Well, she may have, but the point is she didn't testify as to conviction. You're trying to impeach him apparently by prior conviction at this point.

[STATE]: Yes.

[THE COURT]: And I have to make an initial determination before that is allowed.

[COUNSEL FOR WESTPOINT]: And that wasn't done, Your Honor. And because it wasn't done the way it should have been done, the way it has come out in front of the jury at this juncture, I'm going to ask that the Court declare a mistrial.

[THE COURT]: No.

\* \* \*

[COUNSEL FOR WESTPOINT]: 609, is it?

[THE COURT]: Infamous crime or other crime relevant to the witness's credibility. I'm going to rule that it is a crime

that is relevant to the witness's credibility and the probative value outweighs the danger of unfair prejudice. So you may continue to ask him, but you have to be specific.

[STATE]: Okay. I have no problem with that.

[THE COURT]: My wife is about to be convicted of speeding. Okay.

[STATE]: I understand that, Your Honor.

[COURT]: The motion for mistrial is denied.

The State then resumed cross-examining Westpoint, who admitted that, in 2002, he had been convicted of a third degree sexual offense:

[STATE]: Okay. Mr. Westpoint, the fact is that in 2001— sorry, in 2002 actually, that you pled guilty to third degree sex offense, isn't that correct, in front of Judge Spellbring?

[WESTPOINT]: I took a plea, an Alford plea for third degree sex offense saying that I plead guilty, but I'm not guilty.

[STATE]: But the fact is that you did enter a plea which resulted in a guilty finding; isn't that correct?

[WESTPOINT]: Not for a guilty finding because I got tired of fighting it.

[STATE]: Sir, you are aware that an Alford plea results in a conviction?

[WESTPOINT]: Yes.

[STATE]: So the fact is that you have been convicted of third degree sex offense involving [Westpoint's daughter]?

[WESTPOINT]: Yes.

[STATE]: So that's what you meant when you said, I'm not going through this again, because you had previously been convicted in 2002—

[WESTPOINT]: No. I've previously been—

[COUNSEL FOR WESTPOINT]: Objection.

[THE COURT]: Overruled.

[STATE]: The fact is you've been previously convicted in 2002 of having inappropriate contact with [Westpoint's daughter], the third degree sex offense; isn't that correct?

[WESTPOINT]: Yes, ma'am.

[STATE]: Now, you said that [Westpoint's daughter] was having problems with the discipline you were imposing?

[WESTPOINT]: Yes, ma'am.

[STATE]: But isn't it possible that [Westpoint's daughter] didn't want to have any kind of relationship with you because of the contact that happened in 2001?

[WESTPOINT]: No, ma'am.

[STATE]: She was okay with that?

[WESTPOINT]: She was okay with what?

[STATE]: She was okay with what you were doing, what happened in 2001, everything was fine?

[COUNSEL FOR WESTPOINT]: Objection, Your Honor.

[THE COURT]: Overruled.

[WESTPOINT]: Nothing happened in 2001. Just because I took a plea, doesn't mean anything happened.

[STATE]: But the fact is you took a plea—

[WESTPOINT]: I took a plea because—

[STATE]: No. Listen to the question.

[WESTPOINT]: Go ahead.

[STATE]: You took a plea in a case where the allegations were you had inappropriate contact with [Westpoint's daughter]?

[WESTPOINT]: I took a plea because my mother said that's the best thing for me to do.

[THE COURT]: You can't both talk at the same time.

[STATE]: I apologize, Your Honor.

But the fact is, sir, that case involved the contact [Westpoint's daughter] was talking about yesterday, the humping, the digital penetration. The sexual contact that [Westpoint's daughter] talked about yesterday, that's what that case was about, wasn't it?

[WESTPOINT]: No.

[STATE]: Oh, really. What was that about?

[WESTPOINT]: Could you repeat the question? You said something about that was the case. The first case and this case now are two different cases.

[STATE]: What I'm talking about, sir, is the 2001 case.

[WESTPOINT]: Okay.

[STATE]: The fact is the inappropriate contact [Westpoint's daughter] talked about yesterday—the touching, the rubbing, the humping, the digital penetration that she talked about yesterday, the same things that she is saying that you did to her in 2005, what she was talking about yesterday, that's what that 2001 case was about, was it not?

[WESTPOINT]: No, it wasn't.

[STATE]: Oh, so it's about something different. It was about a different contact?

[WESTPOINT]: Yeah. It was about a different contact.

[STATE]: So there were additional contacts on top of what you're talking about?

[WESTPOINT]: No. That's what you're saying, not me.

[STATE]: Okay. So what was that 2001 thing about?

[WESTPOINT]: 2001 was about the same thing she said I touched her, but I didn't touch her.

[STATE]: Okay. But what she described yesterday, that's what the [2001] case was about, right? When she said that you touched her in 2001, she said you touched her, you put your fingers inside her vagina, you were rubbing her, those types of things, that's what she's talking about. That's the 2001 case she was talking about?

[WESTPOINT]: Yes, ma'am.

[STATE]: And those allegations, the digital penetration, the humping, the rubbing, that's what she's talking about again now in 2005, isn't it?

[WESTPOINT]: Yes, ma'am.

At the conclusion of all of the evidence, the court denied Westpoint's motion for judgment of acquittal regarding the remaining counts related to March 7th and 16th.

After being instructed, the jury deliberated and found Westpoint not guilty of the charges regarding March 7, 2005, but found him guilty of the charges stemming from the March 16th incident. The judge sentenced Westpoint to twenty years imprisonment for second degree rape, and ten years for sexual abuse of a minor, to run consecutive to the second degree rape sentence, and merged the sentences for third degree sexual offense, fourth degree sexual offense and second degree assault.

Westpoint noted an appeal to the Court of Special Appeals, which, in an unreported opinion, vacated the judgment of the Circuit Court and remanded the case for a new trial. Addressing the question of whether evidence of a conviction for a third degree sexual offense is admissible for impeachment under Rule 5–609, the intermediate appellate court opined that the conviction was not relevant to credibility and thus inadmissible for impeachment purposes:

> As shown by an examination of section 3–307 of the Criminal Law Article, there are numerous ways that the State can convict a person under that section. The offense can be committed by various assaultive acts (see Section 3–307(a)(1)), but the offense can also be committed by non-assaultive means. *See* § § 3–307(a)(2), (3), (4), and (5).

> "[A]cts of violence generally have little, if any, bearing on honesty and veracity." *Prout,* 311 Md. at 364, 535 A.2d 445. *See also Fulp* [*v. State*], 130 Md.App. [157] at 167[, 745 A.2d 438 (2000)] (holding that the crime of assault with intent to murder was neither an infamous crime nor a crime relevant to the witness's credibility. 130 Md.App. at 167[, 745 A.2d 438].) Likewise, the non-assaultive ways that a third-degree sexual offense can be perpetrated tell little about whether the perpetrator was credible or honest. In this regard, what the Court of Appeals said in *State v. Giddens,*

335 Md. 205, 215–16[, 642 A.2d 870] (1994), is here relevant....

\* \* \*

In *Giddens*, the Court of Appeals, as a matter of first impression, was called upon to decide whether the offense of distribution of cocaine was relevant to credibility and thus admissible for impeachment purposes subject to the other conditions that were set forth in the predecessor to the current Maryland Rule 5–609. In *Giddens*, the rationale for its ruling was as follows:

> [W]e believe that an individual convicted of cocaine distribution would be willing to lie under oath. "[A] narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *United States v. Ortiz*, 553 F.2d 782, 784 (2nd Cir.[1977]).... Therefore, we hold that a prior conviction for distribution of cocaine is relevant to credibility....

*Id.* at 217[, 642 A.2d 870].

\* \* \*

In determining whether a prior conviction is relevant to credibility, the Court is required to look to the elements of the crime at issue and not, as the State asks us to do, to the particular facts that resulted in the defendant's prior conviction. *Giddens*, 335 Md. at 222[, 642 A.2d 870]. Unlike the situation involving drug dealers, it cannot be said, as a generalization, that persons guilty of a sexual offense in the third degree must engage in "dissembling in the course of that activity," nor is there anything in the nature of the crime itself that would allow a court to say, as it did in *Giddens*, that persons who commit such offenses are "prepared to say whatever is required by the demands of the moment, whether the truth or a lie." It may be said, however, that usually, as a generalization, persons who engage in third-degree sexual offense do so in "secrecy." But the same can be said as to other crimes, about which

the Court of Appeals has said are not admissible for impeachment purposes.

We granted both the State's Petition for Certiorari and Westpoint's Conditional Cross–Petition. *State v. Westpoint,* 401 Md. 172, 931 A.2d 1095 (2007).

## Discussion

■ The State argues that Westpoint's prior conviction for third degree sexual offense was admissible pursuant to Rule 5–609 for purposes of impeachment because it was relevant to credibility, and if not, its admission was harmless error. The State also contends that the trial judge properly exercised his discretion in admitting, for substantive purposes, other crimes, wrongs or acts evidence under Rule 5–404(b) because the evidence was relevant to Westpoint's identity and intent.[8]

Conversely, Westpoint contends that his prior conviction for third degree sexual offense was not admissible for purposes of impeachment because it was not relevant to credibility, and, if relevant, should not be admitted because its probative value was outweighed by its prejudicial effect. Westpoint, in his conditional cross-petition, also argues that the trial judge erred in admitting, as substantive evidence, other acts evidence related to the crime for which he was convicted.

The crux of the instant case involves the interplay, if any, between Rule 5–404(b) other crimes, wrongs or acts evidence and evidence of a prior conviction under Rule 5–609. The State offered into evidence to detract from Westpoint's credibility, pursuant to Rule 5–609, that he had been convicted of third degree sexual offense in 2002, as well as other "bad acts" evidence as substantive evidence under Rule 5–404(b), to show that it was more likely that Westpoint committed the instant

---

**8.** The Court of Special Appeals held, and we agree, that Westpoint did preserve his objection to the admission of the prior conviction evidence. His attorney objected to questions about his 2002 conviction for a third degree sexual offense when they were first asked, and during the subsequent bench conference, made clear that he believed Rule 5–609 governed and that the evidence of the prior conviction was inadmissible.

offenses because he had committed similar acts in 2001. We will address the prior conviction issue first, and to provide guidance when this case is remanded, we consider Westpoint's argument that the similar acts evidence was inadmissible.

### Impeachment by Prior Conviction—Rule 5–609

Rule 5–609, which governs impeachment by evidence of a prior criminal convictions,[9] states in pertinent part:

(a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) **Time limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

(c) **Other limitations.** Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:

(1) the conviction has been reversed or vacated;

(2) the conviction has been the subject of a pardon; or

(3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

---

**9.** *But see* Rule 5–608(b), entitled "Impeachment by examination regarding witness's own prior conduct not resulting in convictions," which states:

The court may permit any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness. Upon objection, however, the court may permit the inquiry only if the questioner, outside the hearing of the jury, establishes a reasonable factual basis for asserting that the conduct of the witness occurred. The conduct may not be proved by extrinsic evidence.

*See also* Maryland Code (1974, 2002 Repl.Vol.), Section 10–905 of the Courts and Judicial Proceedings Article.[10]

In *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988), we provided a historical review of impeachment by prior conviction in Maryland:

> The General Assembly first spoke on this topic in Chapter 109 of the Acts of 1864. This statute has retained its original substance for well over 100 years and is now embodied in Maryland Code (1974, 1984 Repl.Vol.), § 10–905 of the Courts and Judicial Proceedings Article. Section 10–905, in pertinent part, provides that "[e]vidence is admissible to prove the ... fact of [a witness's] conviction of an infamous crime." The legislative intent behind this statute is fairly clear. At common law, and prior to the time Maryland's impeachment statute was enacted, an individual convicted of an infamous crime was disqualified from testifying. When the General Assembly enacted Chapter 109 in 1864 it intended to remove this common law disqualification. However, rather than allow these witnesses to testify free from the taint of their prior infamous convictions, the legislature chose to make these convictions admissible for impeachment purposes. Thus, a witness convicted of an infamous crime was no longer disqualified from testifying, but his testimony was subject to impeachment by his infamous conviction. In short, § 10–905's legislative history suggests that the convictions admissible for impeachment purposes

---

**10.** Section 10–905 of the Courts and Judicial Proceedings Article provides:

> (a) *In general.*—Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.
> (b) *Certificate under seal as evidence.*—The certificate, under the seal of the clerk of the court, of the court in which the conviction occurred is sufficient evidence of the conviction.

We have said that to the extent that Section 10–905 "is inconsistent with the Rule bearing on impeachment by prior crimes, the Rule controls." *Jackson v. State*, 340 Md. 705, 712 n. 3, 668 A.2d 8, 11 n. 3 (1995).

under the statute are those that were infamous, and thereby rendered a person incompetent to testify, at common law. In *Garitee v. Bond*[, 102 Md. 379, 62 A. 631 (1905)], this Court set forth the crimes that the common law regarded as infamous: "*treason, felony, perjury, forgery* and those other offenses, classified generally as *crimen falsi.*" Several commentators are in agreement.

Clearly then, the legislative purpose behind Maryland's impeachment statute requires that the crimes admissible *per se* under § 10–905 be limited to those crimes within the common law definition of "infamous." These crimes are the felonies and the *crimen falsi.*

\* \* \*

The first significant Maryland case to discuss the topic was *Nelson v. Seiler*[, 154 Md. 63, 139 A. 564 (1927)]. In *Nelson,* the question was whether a defendant in a civil suit arising out of an automobile accident could be impeached with his prior convictions for violations of the motor vehicle law. The appellant argued that "only convictions for crimes involving moral turpitude reflect upon a witness' worthiness of belief, and evidence of lesser crimes is irrelevant." The appellant further argued that, even if the convictions admissible for impeachment purposes were not limited to those involving moral turpitude, the court must make some distinction between lesser crimes relevant to credibility and those irrelevant to credibility. This Court agreed, and made the following statement:

> It is not required that the evidence (of violations to impeach a witness) be restricted to infamous crimes *or those involving moral turpitude* on the one hand, but, on the other, the purpose of the admission, to impeach credibility, must impose some limits; the convictions should be of infringements of the law that may have some tendency to impeach credibility, and not all infringements do.

This statement has been repeated countless times by Maryland appellate courts responding to the question of whether

a particular crime was admissible for impeachment pur-
poses.

\* \* \*

While we believe it is difficult to draw distinct lines on what
crimes may be used to impeach, we think the law of this
state may be generally summarized as holding that to be
admissible for impeachment purposes a conviction must be
either a felony at common law or a *crimen falsi* and thus
infamous, or a lesser crime bearing upon the witness's
credibility. Stated another way, crimes; other than those
that are infamous, whether misdemeanors or statutory felo-
nies, fall into the class of lesser crimes and may or may not
reflect on one's tendency to be truthful.... If the crime
being offered to impeach says nothing about the likelihood
of the witness's propensity to be truthful under oath, it is
irrelevant on that issue and should not be admitted. If the
prior conviction passes this relevancy test, then the trial
court must determine if its probative value outweighs its
prejudicial effect. In other words, because evidence is
legally admissible does not necessarily require its admission.
Only if the trial judge, in the exercise of his discretion, feels
that the prior conviction rationally carries probative value
on the issue of truth and veracity of the witness, should the
evidence be admitted.

*Prout,* 311 Md. at 358–63, 535 A.2d at 450–52 (emphasis in
original) (citations omitted) (footnotes omitted).

The same day we decided *Prout,* we noted in *Wicks v. State,*
311 Md. 376, 384 n. 5, 535 A.2d 459, 462 n. 5 (1988), that this
area of law "would appear to be an appropriate one for
consideration by the Rules Committee." Consequently, Rule
1–502 was drafted and redrafted numerous times; it was
adopted by this Court on November 1, 1991, and became
effective January 1, 1992. The Rule stated:

(a) **Generally.**—For the purpose of attacking the credibility
of a witness, evidence that the witness has been convicted of
a crime shall be admitted if elicited from the witness or
established by public record during cross-examination, but

only if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) **Time Limit.**—Evidence of a conviction under this Rule is not admissible if a period of more than 15 years has elapsed since the date of the conviction.

(c) **Other Limitations.**—Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:

(1) the conviction has been reversed or vacated;

(2) the conviction has been the subject of a pardon; or

(3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

(d) **Effect of Plea of Nolo Contendere.**—For purposes of this Rule, "conviction" includes a plea of nolo contendere followed by a sentence, whether or not the sentence is suspended.

We explained in *State v. Giddens,* 335 Md. 205, 213, 642 A.2d 870, 875 (1994), that Rule 1–502 "essentially creates a three-part test for determining whether prior convictions may be admitted for impeachment purposes":

First, subsection (a) sets forth the "eligible universe" for what convictions may be used to impeach a witness's credibility. This universe consists of two categories: (1) "infamous crimes" and (2) "other crimes relevant to the witness's credibility." Infamous crimes include treason, common law felonies, and other offenses classified generally as *crimen falsi.* If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends. This threshold question of whether or not a crime bears upon credibility is a matter of law. If the crime falls within one of the two categories in the eligible universe, then the second step is for the proponent to establish that the conviction was not more than 15 years old, that it was not

reversed on appeal, and that it was not the subject of a pardon or a pending appeal. Finally, in order to admit a prior conviction for impeachment purposes, the trial court must determine that the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party. This third step is clearly a matter of trial court discretion.

*Id.* at 213–14, 642 A.2d at 874 (citations omitted) (footnotes omitted).

Rule 1–502 was rescinded effective July 1, 1994, and in its stead, Rule 5–609, which was "nearly identical to former Rule 1–502," was adopted. *State v. Woodland,* 337 Md. 519, 521 n. 1, 654 A.2d 1314, 1315 n. 1 (1995). *See also Giddens,* 335 Md. at 207 n. 2, 642 A.2d at 871 n. 2. In *Jackson v. State,* 340 Md. 705, 712–13, 668 A.2d 8, 12 (1995), we recognized that the same three-part test analysis, that we explicated in *Giddens,* is applicable under Rule 5–609:

First, a conviction must fall within the eligible universe to be admissible. This universe consists of two categories: (1) infamous crimes, and (2) other crimes relevant to the witness's credibility. Md. Rule 5–609(a). Second, if the crime falls within one of these two categories, the proponent must establish that the conviction is less than fifteen years old. Md. Rule 5–609(b). Finally, the trial court must weigh the probative value of the impeaching evidence against the danger of unfair prejudice to the defendant. Md. Rule 5–609(c).

With respect to impeachment, we have said that impeachment with a prior conviction can be used "to assist the fact finder in measuring the credibility of the defendant," *Ricketts v. State,* 291 Md. 701, 703, 436 A.2d 906, 907 (1981), at the same time preventing "a jury from convicting a defendant based on his past criminal record, or because the jury thinks the defendant is a bad person." *Jackson,* 340 Md. at 715, 668 A.2d at 13. We have, as a result, imposed limitations on the use of past convictions "in an effort to discriminate between the informative use of past convictions to test credibility, and

the pretextual use of past convictions where the convictions are not probative of credibility but instead merely create a negative impression of the defendant," because:

"The danger in admitting prior convictions as evidence to impeach the defendant stems from the risk of prejudice. The jury may improperly infer that the defendant has a history of criminal activity and therefore is not entitled to a favorable verdict. Such evidence may detract from careful attention to the facts, despite instructions from the Court, influencing the jury to conclude that if the defendant is wrongfully found guilty no real harm is done. Where the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater, as the jury may conclude that because he did it before he most likely has done it again. The net effect of such evidence is often to discourage the defendant from taking the stand.

Thus, the role of the trial judge takes on added importance. It becomes his function to admit only those prior convictions which will assist the jury in assessing the credibility of the defendant. The trial judge must weigh the probative value of the convictions against the prejudice to the defendant in asserting his defense."

*Id.* at 715–16, 668 A.2d at 13, quoting *Ricketts v. State,* 291 Md. 701, 703–04, 436 A.2d 906, 907–08 (1981).

We have had occasion to address whether certain convictions are relevant to credibility such that they may be admissible as impeachment. *Ricketts,* 291 Md. at 701, 436 A.2d at 906, involved a defendant on trial for second degree rape, second degree sexual offense and burglary, who took the stand to testify; on cross-examination, the State sought to impeach him with evidence that he had been previously convicted of indecent exposure. Addressing whether the prior conviction could be used for impeachment, we noted that the critical issue was whether the crime of indecent exposure had " 'some tendency to show that the person charged is not to be believed under oath' "; " 'In other words, is the witness devoid of moral perception, such a person as would regard lightly the obli-

gations of an oath to tell the truth'?" *Id.* at 707, 436 A.2d at 909–10. We stated that for a conviction to affect veracity, the crime itself, by its elements, must clearly identify the prior conduct of the witness that tends to show that he is unworthy of belief; indecent exposure, we concluded, did not:

> The point we stress is that an indecent exposure conviction, without more, says little about the conduct for which the person was convicted. Because the offense requires only a general intent, the gamut of offenses and circumstances that fall within the ambit of the crime are so widely varied that, while one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment perhaps dictated by necessity. The intent required for the crime does not require the accused to have performed a flagrant act damnable as an affront to decency and social norms but encompasses acts committed where the accused was unaware that his or her lack of apparel would be noticed.

> It is this vagueness or uncertainty in the nature of the offense that makes it difficult to classify indecent exposure as infamous or something less. As we have noted, the crimes that are normally associated with the term "infamous because of their moral turpitude [are] treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi.*" They leave no doubt as to the type of conduct committed and condemned. The courts, legislature, and society have made the determination that such crimes, because they show such a lack of regard for societal norms and values, are relevant in assessing the credibility of one who has been convicted of those offenses.

* * *

At the very heart of our determination of this matter, however, is the kinds of conduct which give rise to this offense. We believe that whether the crime sought to be used to impeach describes with sufficient specificity the conduct reflecting on the defendant's credibility is another factor to be weighed by the trial court. If the crime is so

ill-defined that it causes the factfinder to speculate as to what conduct is impacting on the defendant's credibility, it should be excluded. Stated differently, since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment. It is clear to us that the introduction of a prior conviction for indecent exposure sheds no light on what it is the defendant has done and hence it is beyond the ken of any factfinder to assess what, if any, impact such conviction has upon the defendant's veracity.

The argument arises that the defendant has the opportunity to explain the circumstances surrounding his prior conviction, allowing him to offset whatever prejudicial effect the conviction might have. This, however, is manifestly unfair and would amount to a retrial of the prior conviction before the present jury. The prejudice resulting from such a procedure clearly would outweigh whatever minute probative value the conviction had.

We hold, therefore, that, for purposes of impeachment, indecent exposure is not an infamous crime, a crime of moral turpitude, a felony, nor a crime involving dishonesty or deceit. Further, we hold, it is a lesser crime for which the proscribed conduct includes such a wide variety of behavior that the factfinder would be unable to make a reasoned judgment as to whether the offense affects the defendant's credibility; it is inadmissible for purposes of impeachment.

*Id.* at 710–11, 713–14, 436 A.2d at 911, 913. *See also Lowery v. State,* 292 Md. 2, 437 A.2d 193 (1981) (per curiam) (following our holding in *Ricketts* and determining that a conviction for possession of barbiturates is not admissible for purposes of impeachment).

In *State v. Duckett,* 306 Md. 503, 510 A.2d 253 (1986), we addressed whether a conviction for battery was admissible to impeach. We determined that, similar to indecent exposure, it was not, because there are various relatively innocent acts

which could give rise to a conviction for battery, and thus, the crime, by its elements, evinces nothing *per se* regarding the veracity of a witness:

> Like indecent exposure, then, the types of offenses which fall within the ambit of the crime of battery vary widely. A person may commit battery by kissing another without consent, touching or tapping another, jostling another out of the way, throwing water 'upon another, rudely seizing a person's clothes, cutting off a person's hair, throwing food at another, or participating in an unlawful fight. On the other hand, a battery may take the form of a severe beating. By the name of the crime battery, then, the conduct of the witness is unknown; thus nothing can be shown concerning the probable veracity of the witness.
>
> * * *
>
> Although there may be some circumstances where one who has committed a battery has done an act so devoid of regard for societal norms and values so as to render his credibility suspect, we cannot say, just from the name of the crime as assault or assault and battery, that the witness has committed such an act. Indeed, as one court noted, "[a]cts of violence ... which may result from a short temper, a combative nature, extreme provocation, or other causes generally have little or no direct bearing on honesty or veracity." We agree. There is no basis in logic to say that a propensity to engage in fisticuffs amounts to a predilection to lie.

*Id.* at 510–12, 510 A.2d at 257–58 (citations omitted). *See also State v. Joynes,* 314 Md. 113, 549 A.2d 380 (1988) (battery conviction not admissible for impeachment purposes).

In *Prout,* 311 Md. at 348, 535 A.2d at 445, we addressed whether a witness could be impeached with evidence of prior convictions for prostitution and solicitation. We explicated that "[i]f the crime being offered to impeach says nothing about the likelihood of the witness's propensity to be truthful under oath, it is irrelevant on that issue and should not be admitted," and agreed with the trial court that "prostitution

and solicitation as isolated conduct had no bearing on the witness's credibility." *Id.* at 363, 365, 535 A.2d at 452, 453. Also, in *Morales v. State,* 325 Md. 330, 339, 600 A.2d 851, 855 (1992), we held that convictions for disorderly conduct, motor vehicle offenses and possession of PCP were not relevant to credibility.

In *Giddens,* 335 Md. at 214, 642 A.2d at 874, the gravamen was "whether a prior conviction for distribution of cocaine impacts on the credibility of a witness." We iterated that in

"a purely philosophical sense it can be said, understandably, that all violations of the law, by their very nature, involve some element of dishonesty. Thus, one could argue that jay walking, spitting on a sidewalk, running a red light or a stop sign, and exceeding the speed limit, however slightly, are 'dishonest' because they involve acts for which one can be punished by the State or its subdivisions."

*Id.* at 215, 642 A.2d at 875. "Nevertheless," we continued, "certain crimes have little or no bearing on credibility and consequently are not admissible for impeachment purposes." *Id.* We concluded that a prior conviction for distribution of cocaine is relevant to credibility, and thereby, admissible for impeachment, because an individual convicted of that crime "would be willing to lie under oath." *Id.* at 217, 642 A.2d at 876. Explaining our rationale, we noted:

As already observed, we have held that a prior conviction for simple possession of narcotics has no bearing on credibility. But we have never expressly considered whether a conviction for drug dealing—whether it be drug manufacturing, drug distribution, or possession of drugs with intent to sell—is probative of a lack of veracity.

\* \* \*

[W]e believe that an individual convicted of cocaine distribution would be willing to lie under oath. "[A] narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." Therefore, we hold that a prior conviction for

distribution of cocaine is relevant to credibility and as such is admissible for impeachment purposes, subject to the other conditions that exist in [the Rule].

\* \* \*

The crime of cocaine distribution is not so "ill-defined" that a jury would have difficulty determining the precise nature of the offense. The offense is unlike that involved in *Ricketts.* Concededly, it may be difficult to determine what a defendant convicted of "indecent exposure" may have done; distribution of cocaine, however, has a well understood meaning within the community and the name of the crime permits the fact finder to assess what, if any, impact such conviction has upon a witness's veracity.

*Id.* at 216–19, 642 A.2d at 875–77 (citations omitted) (alteration in original). *See also Woodland,* 337 Md. at 519, 654 A.2d at 1314 (following our holding in *Giddens* and stating that a conviction for possession with intent to distribute controlled dangerous substances was admissible for purposes of impeachment).

We reflected in these cases that, in order for a crime to be admissible for impeachment, the crime itself, by its elements, must clearly identify the prior conduct of the witness that tends to show that he is unworthy of belief. *Giddens,* 335 Md. at 218, 642 A.2d at 876; *Duckett,* 306 Md. at 512, 510 A.2d at 258; *Ricketts,* 291 Md. at 713, 436 A.2d at 911–12. Moreover, a crime tends to show that the offender is unworthy of belief, if the perpetrator "lives a life of secrecy" and engages in "dissembling in the course of [the crime], being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *Giddens,* 335 Md. at 217, 642 A.2d at 876.

■ In the instant appeal, the State sought to introduce evidence, for the purpose of impeachment, that Westpoint was convicted of a third degree sexual offense in violation of Section 3–307 of the Criminal Law Article, Maryland Code (2002), which provides:

(a) *Prohibited.*—A person may not:

(1)(i) engage in sexual contact with another without the consent of the other; and

(ii) 1. employ or display a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon;

2. suffocate, strangle, disfigure, or inflict serious physical injury on the victim or another in the course of committing the crime;

3. threaten, or place the victim in fear, that the victim, or an individual known to the victim, imminently will be subject to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

4. commit the crime while aided and abetted by another;

(2) engage in sexual contact with another if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the act knows or reasonably should know the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual;

(3) engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim;

(4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old; or

(5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.

(b) *Penalty.*—A person who violates this section is guilty of the felony of sexual offense in the third degree and on conviction is subject to imprisonment not exceeding 10 years.

A third degree sexual offense, therefore, may be committed by various discrete acts, both assaultive and non-assaultive. We agree with the Court of Special Appeals that Westpoint's prior conviction for a third degree sexual offense, based upon his sexual contact with a victim who was under the age of 14 when

he was more than four years older, does not, *per se,* connote that he would be more likely to lie under oath, and therefore, is not relevant to credibility. Although it could be said that an individual who is convicted of a third degree sexual offense usually acts in "secrecy," that, in an of itself, is not sufficient to render the prior conviction admissible for the purpose of impeachment. *See Morales,* 325 Md. at 339, 600 A.2d at 855, and *Lowery,* 292 Md. at 2, 437 A.2d at 193, in which we concluded that convictions for simple possession of controlled dangerous substances, which by their nature involve secrecy, were not admissible to impeach. Therefore, Westpoint's prior conviction for a third degree sexual offense cannot be.[11]

---

**11.** Rule 5–609 was derived in part from Federal Rule 609, although the two rules differ. *See* Federal Rule of Evidence 609(a) (prior convictions of crimes involving dishonesty or false statement are *per se* admissible, while prior convictions of felonies are admissible only if the probative value outweighs the prejudicial effect). Federal Rule 609, nevertheless, imposes the same requirement that only those convictions which are probative of the witness's character trait for truthfulness are admissible for impeachment. Various federal courts, addressing similar sexual offenses, have held that the convictions are not highly probative of credibility. *See Christmas v. Sanders,* 759 F.2d 1284, 1292 (7th Cir. 1985) ("[T]he trial judge correctly noted that a conviction for rape was not highly probative of credibility. *See* Saltzberg, *supra,* at 373 (sex crimes "low on the list of crimes relating to veracity")...."); *United States v. Beahm,* 664 F.2d 414, 419 (4th Cir.1981) (in prosecution of taking indecent liberties with children, trial court erred in admitting conviction of defendant for "unnatural and perverted sexual practices" for purpose of impeachment, because it had minimal if any bearing on the likelihood that defendant would testify truthfully); *United States v. Larsen,* 596 F.2d 347, 348 (9th Cir.1979) (per curiam) ("The fact that a defendant has been convicted of child molesting bears only nominally on credibility; there was nothing in the circumstances of this case to increase the probative value of this defendant's prior convictions of this crime."); *United States v. Rabinowitz,* 578 F.2d 910, 912 (2d Cir.1978) (per curiam) (in prosecution for distribution and possession with intent to distribute diazepam, judge did not abuse his discretion in excluding evidence relating to witness' alleged prior acts of sodomy on young children because that evidence's bearing on the witness' propensity to tell truth was tenuous). *But see United States v. Kelly,* 510 F.3d 433, 437 (4th Cir.2007) (admission of defendant's prior conviction for attempted rape of a 12–year–old child was admitted as substantive evidence under Federal Rule 414, which permits the introduction of evidence of past child molestation offenses in child molestation prosecutions to prove propensity); *United States v. Crawford,* 413 F.3d 873, 876 (8th Cir.2005) (per curiam) (concluding that probative value of

The State argues, however, that even if the trial judge erred in admitting evidence of the prior conviction, the error was harmless because bad acts evidence arising from the same incident was admitted. Westpoint's convictions, however, cannot stand unless, "upon [our] own independent review of the record, [this Court] is able to conclude, beyond a reasonable doubt, that the error in no way influenced the verdict." *Newman v. State*, 384 Md. 285, 312, 863 A.2d 321, 337 (2004). *See also Dupree v. State*, 352 Md. 314, 333, 722 A.2d 52, 61 (1998); *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976). We cannot so conclude.

At trial, the prosecution and the defense presented dramatically different accounts of the incidents in issue, the relative validity of which was dependent, largely, on the credibility of Westpoint and his daughter. Westpoint's credibility was tarnished, certainly, by evidence that he had been convicted of a third degree sexual offense, as reinforced by the prosecutor, who, in her closing argument, stated:

> So he wants you to believe that all of this is because she didn't like the fact that I was disciplining her. Come on. 2001, 2005, and the Defendant, who was convicted of having inappropriate sexual contact with his daughter, wants you now to believe that this is all this is. You can't believe what he's telling you. He's been convicted of this crime. This is not somebody who you can believe what he is telling you. He is not to be believed, ladies and gentlemen.

Moreover, the fact that the other crimes, wrongs or acts evidence was admitted does not change our conclusion, because, absent the admission of his conviction, the jury could have determined that the daughter's testimony was unreliable. The prior conviction, however, could have rendered such a conclusion doubtful, because it would have bolstered the daughter's veracity. Reviewing the record before us, we

evidence of defendant's prior conviction for sexual assault outweighed the danger of unfair prejudice and was admissible under Federal Rule 413, which allows the introduction of proof of prior offenses for sexual assault as substantive evidence).

cannot say beyond a reasonable doubt that the admission of Westpoint's prior conviction did not affect the jury's finding of guilt.

### Other Crimes, Wrongs or Acts Evidence—Rule 5–404(b)

We shall, for guidance on remand, analyze the other bad acts issue raised by Westpoint, because the subject is likely to arise again.

Rule 5–404(b) governs the admission of other crimes, wrongs or acts evidence:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

We have opined that evidence of other crimes, wrongs or acts is, generally, not admissible as substantive proof, *Borchardt v. State*, 367 Md. 91, 133, 786 A.2d 631, 656 (2001); *Wynn v. State*, 351 Md. 307, 316, 718 A.2d 588, 592 (1998); *State v. Taylor*, 347 Md. 363, 368, 701 A.2d 389, 392 (1997); *Conyers v. State*, 345 Md. 525, 550, 693 A.2d 781, 792 (1997); *State v. Faulkner*, 314 Md. 630, 633, 552 A.2d 896, 897 (1989), because a jury could decide to convict on the basis of an alleged criminal disposition and might infer that because the defendant has acted badly in the past that he is more likely to have committed the crime charged. *See also Wynn*, 351 Md. at 317, 718 A.2d at 593; *Taylor*, 347 Md. at 369, 701 A.2d at 392; *Straughn v. State*, 297 Md. 329, 333, 465 A.2d 1166, 1168–69 (1983). Yet, other crimes, wrongs or acts evidence may be admissible when it has "special relevance," i.e., when the evidence " 'is substantially relevant to some contested issue and is not offered simply to prove criminal character.' " *Wynn*, 351 Md. at 316, 718 A.2d at 592; *Taylor*, 347 Md. at 368, 701 A.2d at 392. If the evidence reflects notice, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident for example,

it may have greater relevance. *See* Rule 5–404(b); *Wynn,* 351 Md. at 316, 718 A.2d at 592–93. Other bad acts evidence also may be admitted, "if the crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other." *Wynn,* 351 Md. at 316–17, 718 A.2d at 593; *Taylor,* 347 Md. at 369, 701 A.2d at 392. *See also Bryant v. State,* 207 Md. 565, 586, 115 A.2d 502, 511 (1955).

There are limitations to its admissibility, however. In *Wynn,* 351 Md. at 317, 718 A.2d at 593, we set forth a three-step analysis which must be undertaken prior to the admission of bad acts evidence:

> "[The trial court] first determines whether the evidence fits within one or more of the *Ross*[12] exceptions [, essentially the exceptions now found in Rule 5–404(b)]. That is a legal determination and does not involve any exercise of discretion.
>
> If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence. [The appellate court] will review this decision to determine whether the evidence was sufficient to support the trial judge's finding.
>
> If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the "other crimes" evidence is to be carefully weighed against any undue prejudice likely to result from its admission. This segment of the analysis implicates the exercise of the trial court's discretion."

---

12. In *Ross v. State,* 276 Md. 664, 669–70, 350 A.2d 680, 684 (1976), we iterated the "well recognized" exceptions to the general rule excluding other bad acts evidence, that would later be listed in Rule 5–404(b): "Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial."

In other crimes evidence issues, as to whether a matter fits within an exception in the first instance, we extend no deference to a trial court's decision. Initially, courts should exclude other crimes evidence. Only if it fits within an exception will this type of evidence be admissible and, even then, the defendant's involvement must be established by clear and convincing evidence and the probative value and prejudicial effect balanced.

(citations omitted) (alterations in original). *See also Conyers,* 345 Md. at 551–52, 693 A.2d at 793; *Faulkner,* 314 Md. at 634–35, 552 A.2d at 898.

■ At trial, the daughter testified that Westpoint had committed acts similar to those charged in the instant case. Although Westpoint does not challenge the sufficiency of the bad acts evidence, nor whether the evidence falls within any of the exceptions in Rule 5–404(b), he argues that the trial judge erred in admitting the other bad acts evidence because their prejudicial effect outweighed their probative value, while the State asserts, conversely, that the evidence was admissible as substantive proof, under various of our cases, including *Wentz v. State,* 159 Md. 161, 150 A. 278 (1930); *Berger v. State,* 179 Md. 410, 20 A.2d 146 (1941); *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976); *Cross v. State,* 282 Md. 468, 386 A.2d 757 (1978); *State v. Werner,* 302 Md. 550, 489 A.2d 1119 (1985); *Vogel v. State,* 315 Md. 458, 554 A.2d 1231 (1989); and *Acuna v. State,* 332 Md. 65, 629 A.2d 1233 (1993).

In *Wentz,* 159 Md. at 161, 150 A. at 278, Wentz was prosecuted for incest and we addressed whether the State was prohibited from introducing evidence to show that he had committed incest with another daughter. As an issue of first impression, we quoted from Wharton on Criminal Evidence 170 (10th ed.):

"It has been repeatedly held that upon a trial of a charge of having committed any of the crimes known as 'sexual offenses,' evidence of prior acts of the same character are admissible, although such prior act is in and of itself a crime." The same authority, however, says (page 186),

"Offenses against other persons than the one against whom the offense with which the defendant is charged was committed are inadmissible."

*Wentz,* 159 Md. at 165, 150 A. at 280. In *Berger,* 179 Md. at 412, 20 A.2d at 148, the defendant, also on trial for incest, took exception to the question posed to his wife, "Will you state whether or not you noticed any sex abnormalities by Dr. Berger during any period of your married life?" We found the objection well taken and stated:

Another exception to the general rule is recognized in prosecutions for sexual crimes, when similar offenses have been committed by the same parties prior to the crime alleged. But this exception does not apply to prior offenses against any person other than the prosecutrix. . . . We hold, therefore, that the trial court properly excluded testimony as to extraneous sexual acts or propensities of the appellant.

*Id.* at 414–15, 20 A.2d at 148.

In *Ross,* 276 Md. at 670, 350 A.2d at 684, we spoke of evidence of prior offenses being admissible, "to show [that the accused had] a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." We quoted our language from *Ross* with approval in *Cross,* 282 Md. at 473–74, 386 A.2d at 761, and *Werner,* 302 Md. at 557, 489 A.2d at 1122.

In *Vogel,* 315 Md. at 458, 554 A.2d at 1231, we addressed the issue of whether other acts evidence was admissible to prove "sexual propensity" when the prior illicit sexual acts were similar to that for which the accused was on trial and the same victim was involved; we answered affirmatively:

Vogel urges that our references to the [sexual propensity] exception were not pronouncements but dicta unnecessary for the decision in the cases and thus not binding as precedent. *See Black's Law Dictionary* at 408 (5th ed. 1979). Perhaps so. But even if each of our references to the exception over the years were dicta, we cited the exception with apparent approval and never expressed or

indicated that we would not favor its application in the proper circumstances. The proper circumstances have arrived. We shall apply the exception. It thereby sheds whatever status it may have had as dicta and joins the case law of Maryland.

* * *

But, as is clear from our discussion above, we have carefully circumscribed the exception. Our acceptance of the exception is not to be taken as meaning that we adopt a broad "sexual propensity" exception to the general rule. The exception our predecessors recognized and which we apply here does not reach beyond the three requirements we have set out. It is strictly limited to the prosecution for sexual crimes in which the prior illicit sexual acts are similar to the offense for which the accused is being tried and involve the same victim.

*Vogel,* 315 Md. at 466, 554 A.2d at 1234. *See also Oesby v. State,* 142 Md.App. 144, 161, 788 A.2d 662, 672 (2002) (ruling as admissible other acts evidence "[w]here the 'other crime' tends to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial").

In *Acuna,* 332 Md. at 65, 629 A.2d at 1233, we further explored the "sexual propensity" exception and explained that it is different from the other exceptions. Unlike the latter, where the other acts evidence is admissible only because it has special relevance to prove intent, motive, absence o f mistake, identity, or common scheme, sexual propensity evidence *is* admissible to prove conformity with past conduct:

The sex crimes exception to the prohibition against other crimes evidence differs markedly from other evidence that is excepted from that rule. When evidence of other crimes is admitted because it has special relevance tending to establish, for example, motive, intent, absence of mistake, identity, or common scheme, the evidence is relevant to an issue other than the character or propensity of the accused to commit crime. But the evidence of prior offenses admit-

ted in *Vogel* was "admissible 'to show [that the accused had] a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial....'" The primary policy consideration underlying the rule against other crimes evidence "is that this type of evidence will prejudice the jury against the accused because of the jury's tendency to infer that the accused is a 'bad man' who should be punished regardless of his guilt of the charged crime, or to infer that he committed the charged crime due to a criminal disposition." Yet, in the area of sex crimes, particularly child molestation, "courts have been likely to admit proof of prior acts to show a party's conformity with past conduct." Professor McLain suggests that this relaxation of the general prohibition is "probably because the character evidence is believed to have greater probative value in those circumstances." In sex crimes cases the special relevance of the other crimes evidence that may be admissible is a criminal propensity particularized to similar sex crimes perpetrated on the same victim.

Thus, in a sex offense prosecution, when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect. The discretion exercised by the trial judge in weighing unfair prejudice against probative value is concerned with special features in the particular case.

*Id.* at 74–75, 629 A.2d at 1237–38 (citations omitted) (alterations in original). In the case *sub judice,* it is clear that evidence regarding the 2001 acts, which was admitted into evidence, fell within the "sexual propensity" exception because the acts were similar and the victim the same.[13]

---

**13.** Rule 5–404(b) was derived from 404(b) of the Federal Rules of Evidence. Federal Rules 413 and 414 went into effect in 1995 and are sexual propensity exceptions to the general rule of Federal Rule 404(b). *See* Federal Rule of Evidence 413(a) ("In a criminal case in which the

Westpoint, nevertheless, argues that the trial judge abused his discretion in admitting the other acts evidence because its prejudicial effect was not outweighed by its probative value, an issue that arises in every similar scenario. In *Acuna*, we noted that "in a sex offense prosecution, when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect." 332 Md. at 75, 629 A.2d at 1238. Thus, we stated that the "discretion exercised by the trial judge in weighing unfair prejudice against probative value is concerned with special features in the particular case." *Id.*

Westpoint contends, however, that this case is unique because his conviction for the other acts was admitted into evidence, thereby making the evidence more prejudicial. Although we have held that Westpoint's prior conviction was inadmissible as impeachment, the conviction, nevertheless, had not been admitted at the time his daughter testified. In essence, what Westpoint requests is a *per se* rule rendering inadmissible evidence of other acts when the defendant has been convicted. We disagree.[14]

---

defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."); Federal Rule of Evidence 414(a) ("In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."). Obviously, a notable difference between the federal rules and ours is that the federal exceptions do not require the victim to be the same.

**14.** Several federal courts have determined that a conviction for the prior crime does not tip the balance in favor of undue prejudice under Federal Rule 413, which allows the introduction of proof of prior offenses for sexual assault as substantive evidence, *see United States v. Benally*, 500 F.3d 1085 (10th Cir.2007) (testimony by four victims regarding defendant's prior acts of sexual assault, for which he was convicted, was admissible as propensity evidence in proceedings for

### Conclusion

Therefore, we hold that a prior conviction for a third degree sexual offense is not admissible for purposes of impeachment. Because the trial judge's admission into evidence of Westpoint's prior conviction was not harmless error, we affirm the decision of the Court of Special Appeals and remand the case to the Circuit Court for Prince George's County for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.**

Dissenting opinion by MURPHY, J.

MURPHY, Judge, dissenting.

I agree with the majority and the Court of Special Appeals that "a prior conviction for a third degree sexual offense is not admissible for purposes of impeachment pursuant to Md. Rule 5–609." I also agree with the majority that evidence regarding the 2001 incident was admissible under the "sexual propensity" exception to the general rule excluding "other bad acts" evidence. If the State had not been entitled to introduce evidence of the 2001 incident, I would agree that the respondent is entitled to a new trial. Because evidence of the 2001 incident *was* admissible, however, I would reinstate the judgment of conviction.

If the respondent had been testifying in a civil case (whether as plaintiff, defendant, or non-party witness), it would have been improper to ask him whether he had been convicted of a

---

aggravated sexual abuse of a minor), as well as under Federal Rule 414, which permits the introduction of evidence of past child molestation offenses in child molestation prosecutions to prove propensity. *See United States v. LeMay*, 260 F.3d 1018 (9th Cir.2001) (admission of evidence of mother of victims of defendant's prior sexual abuse, for which he had been found guilty of rape in a juvenile adjudication, was warranted as prior similar acts evidence); *United States v. Sumner*, 204 F.3d 1182 (8th Cir.2000) (evidence of two prior acts of child molestation, one for which defendant was previously convicted, was admitted into evidence because probative value was not outweighed by prejudicial effect).

third degree sexual offense. It would also have been improper to ask the respondent this question if he had been testifying in a criminal case as (1) a non-party witness, or (2) the criminal defendant charged with any offenses other than sexual offenses alleged to have been committed against the very same victim of the sexual offense for which he was convicted in 2002. In the case at bar, however, the State was entitled to prove that the respondent committed the 2001 offense. Under these unique circumstances, the State was entitled to introduce evidence of the respondent's 2002 guilty plea-not merely for purposes of impeachment, but as circumstantial evidence that he committed the 2005 offenses.

The record shows that respondent's trial counsel argued that there were two reasons why the circuit court should deny the State's motion to introduce evidence of the 2001 offense, the first reason being "the fact that this motion [was] filed at the last moment prior to trial." Respondent's trial counsel then stated:

I would strongly request that the Court deny it on the basis of the fact that any possible probative value that such conviction would have is highly outweighed by the extreme prejudice and unfair prejudice that it would bring upon the Defendant in this particular case.

Obviously, once the jury hears that the Defendant has a prior conviction for a third degree sexual offense, the Defendant is charged with second degree rape in this particular case, third degree sexual offense and other related offenses, even though the Court may and likely would give limiting instructions, I don't think that the jury would be able to dispel that—one, follow the Court's instruction, and two, the fact that once they hear that, they will unfairly hold it against him. That there's a propensity or an identity for illicit sexual relations with the victim in this case, they would convict him upon hearing that charge in and of itself.

I don't think that the Court can in this particular case find that the State's alleged need or need for this evidence is outweighed by its prejudicial effect against the Defendant.

The circuit court, expressly relying on the case of *Oesby v. State*, 142 Md.App. 144, 788 A.2d 662 (2002), ruled that evidence of the 2001 offense was admissible because the court found that this evidence (1) fell under the "intent exception" to the rule excluding "other crimes evidence," (2) was "more than clear and convincing," and (3) "would outweigh the unduly prejudicial effect[.]" Because this Court has affirmed that ruling, respondent's present conviction should not be reversed on the ground that he was unfairly prejudiced by the cross-examination about his 2002 guilty plea.

I am persuaded that the respondent's direct examination opened the door to the cross-examination about the disposition of the charges that resulted from the 2001 incident. The record shows that, during the respondent's direct examination, he made a vague reference to "not going through this again," which insinuated that the victim's testimony about the 2001 incident was as false as her testimony about the 2005 incidents. If the State had been prohibited from questioning the respondent about this remark, the jurors may well have (1) accepted the respondent's testimony that "[n]othing happened in 2001," and (2) applied the *falsus in uno, falsus in omnibus* inference to the victim's testimony about what occurred in 2005.

It is well settled that, although a plea of guilty to a criminal charge does not conclusively establish liability in a civil action arising out of the incident that resulted in the criminal charge, such a plea constitutes an evidentiary admission that may be introduced into evidence during a subsequent civil proceeding. See *Crane v. Dunn*, 382 Md. 83, 93, 854 A.2d 1180, 1186 (2004), *Brohawn v. Transamerica Insurance Company*, 276 Md. 396, 403, 347 A.2d 842, 848 (1975), and *Campfield v. Crowther*, 252 Md. 88, 100, 249 A.2d 168, 176 (1969). This rule should be equally applicable to the case at bar and to every other criminal case in which (1) *whether or not the defendant testifies*, the State is entitled to prove that the defendant committed a particular offense, and (2) the defendant entered a plea of guilty to having committed that particular offense. When this rule is applicable and the defendant chooses to

testify, regardless of what occurs during the direct examination, the prosecutor should be allowed to ask the defendant (1) whether the defendant committed that offense, and (2) whether the defendant entered a plea of guilty to having done so.

On the issue of whether the respondent was unfairly prejudiced by evidence of his 2002 conviction, the record shows that during the jury instruction conference, respondent's trial counsel (1) objected only to "the other crimes evidence instruction," and (2) actually requested that the circuit court deliver an "impeachment on a prior conviction" instruction. The following transpired after the circuit court had begun to instruct the jury:

> [Defense counsel]: Excuse me, Your Honor. There's a matter I need to bring to your attention prior to you proceeding.
>
> May we approach please?
>
> The Court: Yes.
>
> [Defense counsel]: Thank you.
>
> Whereupon, counsel approached the bench, and the following ensued:
>
> [Defense counsel]: Based on the Court's decision to allow the State to impeach Mr. Westpoint with a prior conviction of the sex offense, I am going to object to the Court reading impeachment by prior conviction. I wanted to put that on the record before you read it. That's why I stopped you now, but I'll also make an exception to it after you read it. That's not the one-there's a different one, the one we talked about before you started reading the instructions.
>
> The Court: I don't understand what you're saying.
>
> [Defense counsel]: Okay.
>
> The Court: It's highly unusual to interrupt the instructions.
>
> [Defense counsel]: I understand, Your Honor, but I didn't want to possibly waive any rights.
>
> The Court: I'm going to instruct as they appear.
>
> [Defense counsel]: I beg your pardon?

The Court: I'm going to instruct as the instructions appear.

[Defense counsel]: I understand. You asked me before we started, did I have anything to object to and I mentioned one, but I didn't mention the other.

The Court: Okay. [Defense counsel]: Thank you.

The jury was instructed as follows:

With regard to the proof of intent, you're instructed as follows: Intent is a state of mind and ordinarily cannot be proven directly because there is no way of looking into another person's mind. Therefore, a Defendant's intent may be shown by surrounding circumstances.

In determining the Defendant's intent, you may consider the Defendant's acts and statements, as well as surrounding circumstances. Further, you may, but you're not required to infer that a person ordinarily intends the natural and probable consequences of his acts.

In this case, you've heard evidence that the Defendant pleaded guilty to the crime of third degree sexual offense in 2001 which is not a charge in this case. You may consider this evidence only on the question of the Defendant's intent in this case.

You've heard evidence that the Defendant has been convicted of a crime. You may consider this evidence in deciding whether the Defendant is telling the truth, but for no other purpose. You may not use the conviction as any evidence that the Defendant committed the crime charged in this case.

When the circuit court asked whether there were any exceptions to the jury instructions, respondent's trial counsel stated, "Yes, Your Honor, based on what we discussed earlier. Same ones." No exception was noted on the ground that the limiting "other crimes evidence" instruction was in conflict with the limiting "impeachment by conviction" instruction. I am persuaded that, because of this Court's holding that evidence of the respondent's 2001 offense was "substantively" admissible, the above quoted jury instructions actually gave him an advantage to which he was not entitled. I would

therefore hold that the respondent was not *unfairly* prejudiced by the evidence relating to his 2002 guilty plea, and would order that his judgment of conviction be reinstated.